Jimmie R. McMILLAN; Bruce W. McClymond; FOAG, Inc.; First National Bank Albany/ Breckenridge; Orison F. "Mack" McDonald, II; McDonald Investments, Inc.; and Ole Chaparral on Possum Kingdom, Appellants,

v.

Sammy J. DOOLEY; Myron R. Johnson, Jr.; and W. Don Smith, Appellees.

No. 11–02–00192–CV.

Court of Appeals of Texas, Eastland.

July 30, 2004.

Rehearing Overruled Oct. 7, 2004.

Alfred G. Allen, Turner & Allen, Graham, John R. Cook, Breckenridge, for appellants.

Kerwin B. Stephens, Stephens & Myers, Graham, for appellees.

Panel consists of: WRIGHT, J., and McCALL, J., and McCLOUD, S.J.*

Opinion

AUSTIN McCLOUD, Senior Justice (Retired).

This appeal involves the enforcement of preferential purchase rights in a package conveyance of oil and gas leases. Three of the leases conveyed in the package were subject to rights of first refusal in favor of the original lessees of the leases. The owner of the leases failed to comply with the notice requirements of the preferential purchase provisions prior to conveying the leases. The trial court awarded a recovery in favor of the preferential rightholders as a result of the breach. We affirm in part, reverse and render in part, and reverse and remand in part.

*The Three Leases*

The parties refer to the three leases which are the subject of this appeal as the "Dooley Lease," the "Hill Lease," and the "Johnson Lease." Sammy J. Dooley is the claimant with respect to the Dooley Lease. Dooley acquired the Dooley Lease in May 1976 by leasing his family's ranch from his mother.[1] He subsequently executed a farmout agreement in August 1976 with "Ole Chaparral on Possum Kingdom" whereby Ole Chaparral on Possum Kingdom agreed to drill on the Dooley Lease in exchange for the right to obtain an assignment of Dooley's interests in the Dooley Lease if successful drilling operations occurred.[2] The farmout agreement contained the following provision which is at issue in this appeal:

It is further understood and agreed that we, for ourselves, our successors and assigns, reserve a preferential right to purchase the lease to be assigned herein, including any personal property which may be situated thereon. Before you, or your heirs, successors or assigns, shall (1) sell all or any portion of the lease to be assigned herein, (2) plug and abandon any wells on said lease, or (3) finally plug and abandon said lease, you shall first notify us, or our successors or assigns, in writing by registered mail. Such notification shall include the highest bona fide price offered, and we, or our successors or assigns, shall have ten (10) days after receipt of such written notification to purchase for the price offered and receive an assignment, or to reject such offer and allow same to be sold and/or abandoned. If we, or our successors or assigns, fail to act within ten (10) days after receipt of such written notice, then you, your heirs, successors or assigns, shall be free to sell and/or abandon. The above and foregoing preferential option to purchase shall not apply to hypothecation or mortgage of your assets.

As a result of successful drilling operations, Dooley subsequently assigned the

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. The original lessees of the Dooley Lease were Dooley and Louis Donnell, Jr. The trial court determined that Donnell conveyed his rights arising from the preferential purchase provision to Dooley. Donnell is not a party to this appeal. References to Donnell's previous ownership interest in the Dooley Lease have been omitted for the sake of brevity and clarity.

2. The farmout agreement for the Dooley Lease identified "Ole Chaparral on Possum Kingdom" as a partnership. Orison F. "Mack" McDonald, II, (McDonald) executed the farmout agreement on behalf of Ole Chaparral on Possum Kingdom in the stated capacity of a partner.

Dooley Lease to "Mack McDonald d/b/a McDonald Investments" in August 1978. The assignment expressly provided that it was subject to the terms and conditions of the August 1976 farmout agreement.

W. Don Smith is the claimant with respect to the Hill Lease. Smith acquired the Hill Lease in October 1975.[3] He subsequently executed a farmout agreement in May 1976 with "Ole Chaparral Oil and Gas" whereby Ole Chaparral Oil and Gas agreed to drill a well on the Hill Lease in exchange for the right to obtain an assignment of Smith's interests in the Hill Lease if successful drilling operations occurred.[4] The farmout agreement for the Hill Lease contained an identical preferential purchase provision as contained in the Dooley Lease farmout agreement. As a result of Ole Chaparral Oil and Gas's successful drilling operations on the Hill Lease, Smith assigned the Hill Lease to Ole Chaparral Oil and Gas in July 1976. This assignment expressly provided that it was subject to the terms and conditions of the May 1976 farmout agreement.

Myron R. Johnson, Jr. is the claimant with respect to the Johnson Lease. Johnson acquired the Johnson Lease in August 1978. He subsequently executed a farmout agreement in August 1978 with "Mack McDonald, d/b/a McDonald Investments" whereby McDonald agreed to drill a well on the Johnson Lease in exchange for the right to obtain an assignment of Johnson's interests in the Johnson Lease if successful drilling operations occurred. The farmout agreement for the Johnson Lease

contained an identical preferential purchase provision as contained in the Dooley Lease farmout agreement. As a result of successful drilling operations, Johnson subsequently assigned the Johnson Lease to McDonald.

Either McDonald or an entity under his control continuously owned and operated the three leases from the mid–1970s until January 1998. McDonald assigned the three leases in January 1998 to Jimmie R. McMillan and Bruce W. McClymond in a package conveyance of multiple leases.[5] This conveyance of the leases to McMillan and McClymond is the event which precipitated the underlying lawsuit.

## The Package Conveyance

McMillan contacted McDonald in the latter part of 1997 expressing his and McClymond's interest in purchasing the Dooley Lease. McDonald advised McMillan that he was only interested in selling all of his leases as a package rather than just selling the Dooley Lease by itself. The parties to the conveyance believed that the Dooley Lease was the only lease that had a positive value. McDonald insisted on the inclusion of the other leases in the conveyance, however, in order to reduce his financial liabilities for these leases. McDonald cited his recent health problems as another reason why he wanted to convey all of his leases so that he could essentially retire from the oil and gas business.

---

**3.** Donnell was also an original lessee of the Hill Lease along with Smith. Donnell did not assert a claim with respect to the Hill Lease. References to Donnell's ownership interest in the Hill Lease have been omitted for the sake of brevity and clarity.

**4.** The farmout agreement for the Hill lease identified "Ole Chaparral Oil and Gas" as a partnership. McDonald executed the farmout

agreement on behalf of Ole Chaparral Oil and Gas in the stated capacity of a partner.

**5.** In addition to the three leases at issue in this appeal, McDonald owned an additional lease which he sought to convey in the package. The parties referred to the fourth lease as the "Barnett–Davidson Lease."

McClymond submitted a written offer to McDonald on December 17, 1997, to purchase the leases for $292,000.00. McDonald rejected McClymond's offer of $292,000.00 for the leases and made a counter-demand in the amount $306,543.00 in a letter dated December 23, 1997. McMillan and McClymond subsequently accepted McDonald's counter-demand of $306,543.00. McDonald conveyed the leases to McMillan and McClymond in a series of written assignments with an effective date of January 1, 1998.

Despite the preferential purchase rights applicable to the Dooley, Hill, and Johnson Leases, Dooley, Smith, and Johnson were not advised of the negotiations between McDonald, McMillan, and McClymond prior to closing.[6] McDonald testified that he did not remember that the three leases were subject to preferential purchase rights. McMillan and McClymond did not retain an attorney to conduct a title examination prior to closing. Instead, McClymond conducted his own title examination. He did not discover the existence of the preferential right of purchase provisions during his research.

Dooley learned of the conveyance within a short period of time after it occurred. As set forth in detail below, a great deal of communication occurred between Dooley and the parties to the conveyance concerning the Dooley Lease after the conveyance. Smith testified that, although he was aware of the conveyance at or near the time of its occurrence, he did not have any communications with the parties to the conveyance prior to filing suit. Johnson alleged that he did not learn of the conveyance until several months afterward.

*Communications Pertaining to Dooley's Preferential Purchase Right*

Upon learning of the conveyance in February 1998, Dooley contacted McMillan by telephone to advise him of the preferential purchase right which Dooley possessed with respect to the Dooley Lease. McMillan made an oral offer to Dooley during this conversation for Dooley to purchase the package of leases from McMillan and McClymond for the same price which they had paid to McDonald for the leases. Dooley declined McMillan's offer to purchase all of the leases because Dooley was only interested in the Dooley Lease. Dooley's attorney subsequently wrote a letter to McMillan and McDonald dated February 19, 1998, which formally informed them of Dooley's preferential purchase right. The letter demanded that McMillan and McDonald provide Dooley with information pertaining to the terms of the conveyance.

McMillan formally responded to Dooley's request for information in a letter dated March 9, 1998. McMillan stated in the letter that he and McClymond purchased the Dooley, Hill, Johnson, and Barnett–Davidson Leases from McDonald for a consideration of $306,543.00. McMillan included a copy of McDonald's written counter-demand dated December 23, 1997, and an acceptance letter dated January 15, 1998, from McMillan and McClymond. McMillan concluded the March 9, 1998, letter with the following statement:

This group of properties was offered to me as a package and included the plugging obligation for the eight non-commercial and marginal wells on the other properties. Since there is no way to split out the properties and associated obligations, the purchase is being offered to you on the identical terms.

If you wish to exercise your option, please tender the purchase price set out above to the First National Bank of

6. Dooley, Smith, and Johnson are collectively referred to as "plaintiffs" in this opinion.

Breckenridge, Texas within ten (10) days.

Dooley's attorney responded to McMillan's letter of March 9, 1998, in a letter dated March 18, 1998. The attorney's letter stated in relevant part as follows:

[Dooley] and I can appreciate the predicament that exists for you as a purchaser in connection with this transaction. You have paid $306,543.00 for a group of oil and gas properties and only one of those properties is subject to the preferential option.[7] [Dooley] has absolutely no interest whatsoever in any of these other properties. His interest is solely in connection with the [Dooley Lease]. As you are probably aware, this is an oil and gas lease which is situated on property which has been in Mr. Dooley's family for a number of years. The other problem we have with this is the obligation to provide notice was probably that of Mr. McDonald in connection with this matter. Mr. McDonald had control of how the offer to purchase the properties was to be made and apparently dictated how the transaction was structured. Because of this, it is impossible for us to determine how much of the purchase price is applicable to the Dooley Lease and how much would be applicable to the other properties. You've indicated there was a plugging obligation for eight non-commercial and marginal wells on the other properties. We have no other information concerning these properties and do not know what their protective (sic) capacities would be and whether the salvage from those properties would yield a net return after the plugging. We also have no way of knowing whether the title as to those properties is satisfactory or whether there is any cloud on any of the properties as to their title.

Accordingly, your offer to give Mr. Dooley the option to buy our lease and all of the other properties that were a part of the package with Mr. McDonald is hereby declined. We sincerely appreciate your efforts to try and comply with this agreement, but under the circumstances, this may be impossible to do so since the transaction is already closed without any notice to Mr. Dooley. . . .

[Dooley] might be interested in visiting with you concerning the lease and learning a little bit more about your intentions and perhaps working out some sort of an agreement or understanding whereby the preferential right to purchase could be waived in this instance. If you would like to discuss this matter further, we would be happy to do so.

McMillan and McClymond had not taken any actions to improve production on the Dooley Lease prior to receiving the March 18, 1998, letter from Dooley's attorney. McMillan and McClymond dispatched a workover rig to the Dooley Lease on the day after they received this letter.

The next discussion between Dooley and McMillan and McClymond occurred in April 1998 when Dooley's attorney contacted McClymond by telephone. Dooley's attorney asked McClymond to provide him with the amount of money which McMillan and McClymond actually paid for the Dooley Lease by itself. McClymond did not respond with a total dollar amount. Instead, McClymond advised Dooley's attorney that the consideration paid for the Dooley Lease consisted of the payment of $306,543.00 plus the assumption of the unliquidated liabilities attributable to the other three leases. Dooley's attorney sent a

---

7. At the time that Dooley's attorney sent this letter to McMillan, he apparently was not aware that the Hill and Johnson Leases were also subject to preferential purchase rights.

follow-up letter to McMillan and McClymond dated June 5, 1998, wherein he complained that McMillan and McClymond had failed to provide Dooley with the total dollar amount paid for the Dooley Lease. Dooley's attorney warned McMillan and McClymond that Dooley would file suit to seek a judicial determination of the amount which they had actually paid for the Dooley Lease if they did not provide this information in response to his demand.

Dooley did not make any subsequent demands with respect to the Dooley Lease for approximately two years. During this two-year period, the price of natural gas increased significantly.[8] Dooley's next demand occurred when his attorney wrote another letter to McDonald, McMillan, and McClymond on August 4, 2000. This letter contained the following demand:

Demand is again made for you to furnish to Mr. Dooley the actual consideration paid for the Dooley Lease without including other leases. Once received, Mr. Dooley will advise of his decision within the ten (10) days allowed as to his preferential right. Be advised any response by Mr. Dooley will require all revenue received by you from the lease to be deducted from the purchase price after allowance for operating expenses. Demand is also hereby made for this information. Your failure to comply with this demand upon our part will leave us no other option but to proceed with litigation and have a court set the price and damages for breach of the contract with Mr. Dooley.

## The Underlying Lawsuit

Dooley filed the underlying action on August 31, 2000, against McMillan, McClymond, McDonald, McDonald Investments, Inc., Ole Chaparral on Possum Kingdom, FOAG, Inc., and First National Bank Albany/Breckenridge.[9] Dooley alleged that McDonald, McMillan, and McClymond breached the preferential purchase provision by failing to offer Dooley the right to purchase only the Dooley Lease. In an effort to enforce the preferential purchase right, Dooley sought a determination from the trial court of "what a reasonable purchase price for the [Dooley Lease] actually was or should be in connection with the transaction." Dooley also asserted claims of tortious interference with a contract and fraud against McDonald, McMillan, and McClymond.

Smith and Johnson joined as plaintiffs with Dooley in an amended pleading filed on June 13, 2001. Smith and Johnson alleged that they had not been provided with notice of the conveyance of the Hill and Johnson Leases as required by the respective preferential purchase provisions. Smith and Johnson asserted claims seeking to enforce the preferential pur-

---

8. McClymond testified that, at the time of the conveyance, natural gas prices were in the range of $1.50 per MCF. Natural gas prices had increased to a high of $9.00 per MCF in the winter of 2000. McClymond stated that the price of natural gas was approximately $3.00 per MCF at the time of trial.

9. McDonald Investments, Inc. and Ole Chaparral on Possum Kingdom are entities owned and controlled by McDonald. FOAG, Inc. is an operating company owned by McMillan. McMillan and McClymond designated FOAG, Inc. as the operator of the leas-

es. First National Bank Albany/Breckenridge provided the financing for McMillan and McClymond's purchase of the leases. The Bank filed various deeds of trust in the official public records with respect to the Dooley Lease to reflect its security interest in the property. McDonald, McDonald Investments, Inc., Ole Chaparral on Possum Kingdom, McMillan, FOAG, Inc., McClymond, and First National Bank Albany/Breckenridge are collectively referred to as "defendants" in this opinion.

chase rights applicable to the Hill and Johnson Leases. Dooley, Smith, and Johnson also asserted a claim in their amended pleading that McMillan, McClymond, and FOAG, Inc. were bad faith trespassers upon the leases after the conveyance.

The defendants asserted numerous defenses to the action, including limitations, waiver, estoppel, and laches.[10] The defendants also asserted that Johnson lacked standing to assert a claim with respect to the Johnson Lease. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge asserted a counterclaim seeking a recovery in quantum meruit against Dooley, Smith, and Johnson for operations conducted on the leases after the conveyance.

Acting as the fact finder, the trial court made a preliminary determination that the defendants breached the preferential purchase provisions which applied to the Dooley, Hill, and Johnson Leases. With respect to the Dooley Lease, the trial court determined that McMillan and McClymond paid "consideration in the value of $326,743" for the Dooley Lease. The trial court based this determination on McMillan and McClymond's initial estimate that they would incur plugging costs of $20,000.00 on the other leases in addition to the payment of $306,543.00 for the Dooley Lease. Upon Dooley's election to purchase the Dooley Lease at the price determined by the trial court, the trial court subsequently granted Dooley's request for specific performance by awarding title to the Dooley Lease to Dooley. The trial court also awarded attorney's fees to Dooley.

The trial court determined that McMillan and McClymond intentionally terminated the Hill Lease by lack of production after the conveyance. The trial court awarded a money judgment to Smith in the amount of $7,500.00 based on one-half of the net fair market salvage value of the lease at the time that it terminated.[11] The trial court also awarded attorney's fees to Smith.

With respect to the Johnson Lease, the trial court determined its fair market value at the time of the conveyance to be zero. The trial court awarded title to the Johnson Lease to Johnson. The trial court also awarded Johnson a money judgment in the amount of $10,122.43 against the defendants based on the trial court's determination of the net working interest revenue derived from the Johnson Lease after the conveyance. The trial court also entered a money judgment against McMillan in the amount of $4,000.00 for a pump jack which McMillan sold from the Johnson Lease after the conveyance. The trial court also awarded attorney's fees to Johnson.

The trial court denied the quantum meruit claim asserted by McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge. The trial court also denied Dooley, Smith, and Johnson's claims for negligence, tortious interference with a contract, fraudulent conspiracy, usury, and bad faith trespass.

### Issues on Appeal

McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge bring 39 points of error attacking the trial

---

**10.** Only McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge pleaded the affirmative defense of laches.

**11.** The trial court determined the net fair market salvage value of the Hill Lease to be

$15,000.00. The trial court awarded only one-half of this amount to Smith as a result of Donnell's interest as an original lessee of the Hill Lease.

court's judgment in favor of Dooley, Smith, and Johnson. McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom bring an additional six issues attacking the recoveries obtained by Dooley, Smith, and Johnson. Dooley and Johnson have appealed the trial court's denial of their contention that McMillan, McClymond, and FOAG, Inc. were bad faith trespassers in six appellate issues.

### Defenses of Limitations, Laches, and Estoppel

Prior to considering the plaintiffs' claims individually, we address contentions asserted by McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom that are common to the claims of all three plaintiffs. McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom assert in their fourth issue that the evidence offered at trial conclusively established that plaintiffs' claims are barred under the affirmative defenses of limitations, laches, and estoppel. When a party attacks the legal sufficiency of adverse findings on issues on which he or she has the burden of proof, he or she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issues. *Dow Chemical Company v. Francis*, 46 S.W.3d 237, 241 (Tex.2001).

We first note that McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom did not plead laches as an affirmative defense as required by TEX.R.CIV.P. 94. Therefore, they have waived the defense of laches by failing to plead it in the trial court. *See McDaniel v. Tucker*, 520 S.W.2d 543, 547 (Tex.Civ. App.-Corpus Christi 1975, no writ).

By their express terms, the preferential purchase provisions apply whenever the grantee of the farmout agreement (1) sells all or any portion of the lease; (2) plugs and abandons any well on the lease; or (3) finally plugs and abandons the lease. There were many instances in McDonald's course of operating the leases for over 20 years where fractional interests in wells were conveyed to investors and unproductive wells were plugged. McDonald never advised Dooley, Smith, or Johnson of these actions even though he was technically required to do so by the preferential purchase provisions. McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom contend that plaintiffs' claims are barred under the affirmative defenses of limitations and estoppel because of plaintiffs' failure to file suit for the earlier breaches of the preferential purchase provision.[12]

With respect to McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom's limitations contention, they contend that plaintiffs' causes of action for breach of the preferential purchase provision accrued when the provisions were initially breached several years ago. The event which precipitated this action was McDonald's conveyance of the leases to McMillan and McClymond in 1998. Plaintiffs' suit is not barred by the applicable statute of limitations because they filed suit within four years of this conveyance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon 2002). The earlier breaches of the preferential purchase provisions do not affect the date of accrual of the subsequent breaches which are the subject of this proceeding. *See Pickett v. Keene*, 47 S.W.3d 67, 76–77 (Tex.App.-Corpus Christi 2001, pet'n

---

**12.** McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom pleaded the affirmative defenses of limita- tions, estoppel, and waiver in the trial court pleadings.

dism'd); *F.D. Stella Products Co. v. Scott,* 875 S.W.2d 462, 464–65 (Tex.App.-Austin 1994, no writ).

■ McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom pleaded the defenses of estoppel and waiver together in their trial pleadings. It appears that their estoppel contention on appeal is based on the doctrine of waiver. They contend that plaintiffs waived subsequent compliance with the preferential purchase provision by acquiescing in the earlier breaches. As recently noted by the supreme court in *Jernigan v. Langley,* 111 S.W.3d 153, 156–57 (Tex.2003):

> Waiver is defined as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed ...the question becomes one of law. (Citations omitted)

The previous breaches only concerned actions which conveyed or abandoned fractional interests in the leases. The breach which is the subject of this action is much different than the earlier breaches because it involves the complete divestiture of McDonald's interests in the leases. Given the lesser significance of the earlier breaches which the plaintiffs excused, the evidence does not conclusively establish that plaintiffs waived compliance with the preferential purchase provision in the event McDonald conveyed all of his interests in the leases. McDonald, McDonald Invest-

ments, Inc., and Ole Chaparral on Possum Kingdom's fourth issue is overruled.

### McDonald's Individual Liability

■ McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom assert in their sixth point of error that there is legally insufficient evidence to support a recovery against McDonald in his individual capacity in favor of any of the three plaintiffs. The plaintiffs contend that McDonald has waived any complaint regarding liability in his individual capacity because he did not file a verified denial to the effect that he was not liable in the capacity in which he was sued as required by TEX.R.CIV.P. 93(2). We agree with the plaintiffs' contention that McDonald has waived any complaint regarding his individual liability. *See Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926, 929–30 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom's sixth issue is overruled.

### The Nature of Preferential Purchase Rights

■ A preferential right of purchase, also known as a preemptive right or a right of first refusal, is a right granted to a party giving him or her the first opportunity to purchase property if the owner decides to sell it. *Abraham Investment Company v. Payne Ranch, Inc.,* 968 S.W.2d 518, 524 (Tex.App.-Amarillo 1998, pet'n den'd); *Martin v. Lott,* 482 S.W.2d 917, 920 (Tex.Civ.App.-Dallas 1972, no writ). A preferential purchase right is essentially a dormant option. *A.G.E., Inc. v. Buford,* 105 S.W.3d 667, 673 (Tex.App.-Austin 2003, pet'n den'd). It requires the property owner, before selling it to another, to offer it to the rightholder on the terms and conditions specified in the contract granting the right. *A.G.E., Inc. v.*

*Buford, supra* at 673; *see West Texas Transmission, L.P. v. Enron Corporation,* 907 F.2d 1554, 1561–62 (5th Cir.1990). When the property owner expresses his or her intention to sell, the rightholder must elect to either purchase the property or decline to purchase it and allow the property owner to sell it to another. *A.G.E., Inc. v. Buford, supra* at 673; *Martin v. Lott, supra* at 922. The holder of such a right has no right to compel a sale or to prevent a sale but only has the right to be offered the property if and when the owner decides to sell. *Abraham Investment Company v. Payne Ranch, Inc., supra* at 525; *Martin v. Lott, supra* at 922.

From a timing perspective, there is no dispute that the preferential purchase provisions were initially breached because the leases were conveyed without being offered to Dooley, Smith, and Johnson prior to the conveyance. The initial breach of the preferential purchase provisions does not necessarily determine the outcome of the parties' dispute. A purchaser of property subject to a preferential purchase right takes the property subject to that right. *A.G.E., Inc. v. Buford, supra* at 673. When a sale is made in breach of the preferential purchase right, the rightholder obtains an enforceable option to acquire the property according to the terms of the conveyance. *A.G.E., Inc. v. Buford, supra* at 673. However, the option is not perpetual, and the rightholder must choose between exercising it or acquiescing in the transfer of the property. *A.G.E., Inc. v. Buford, supra* at 673; *Martin v. Lott, supra* at 922. When the rightholder learns of a conveyance in violation of his or her right, he or she has the opportunity to either accept or reject within the specified time frame, just as if the offer to buy had been properly noticed. *A.G.E., Inc. v. Buford, supra* at 673; *Martin v. Lott, supra* at 922.

### Dooley's Claim

The trial court made the following findings of fact and conclusions of law with respect to the liability aspects of Dooley's claim:

### Findings of Fact

1. Defendants failed and refused to provide Dooley his preferential right to purchase the Dooley Lease pursuant to the terms of and provisions of the preferential purchase provision.

2. Defendants never orally presented to Dooley the opportunity to purchase only the Dooley Lease.

3. Dooley never received written presentment of any opportunity to purchase the Dooley Lease.

4. The only offer extended by Defendants and received by Dooley to purchase the Dooley Lease included as a package deal the purchase of the Johnson and Hill Leases.

5. The Dooley, Johnson, and Hill Leases were each subject to preferential purchase rights held separately and in whole or in part by third parties.

6. Defendants' offer to convey to Dooley the package deal consisting of the Dooley, Johnson, and Hill Leases was not commercially reasonable.

7. Defendants' offer to convey to Dooley the package deal consisting of the Dooley, Johnson, and Hill Leases was not imposed in good faith by Defendants.

8. Defendants' offer to convey to Dooley the package deal consisting of the Dooley, Johnson, and Hill Leases was specifically designed to defeat Dooley's preemptive rights.

*Conclusions of Law*

1. The preferential purchase clause is a binding price agreement and not a terms and conditions agreement.

2. Dooley is entitled to exercise the preferential purchase clause contained in the farmout agreement applicable to the Dooley Lease.

3. Dooley, having timely exercised his preferential right to purchase the Dooley Lease, is entitled to recover title to and possession of the oil and gas lease which comprises the Dooley Lease.

4. Defendants did not have the legal right to include other leases with the Dooley Lease as part of any preferential offer pursuant to the farmout agreement applicable to the Dooley Lease.

5. Dooley was not legally obligated to purchase the Defendants' package deal offer which was not equitable.

6. The package deal offered to Dooley by Defendants did not comply with the provisions of the preferential purchase clause contained in the farmout agreement applicable to the Dooley Lease.

■■■ Defendants bring numerous points of error attacking these findings of fact and conclusions of law. Findings of fact in a bench trial have the same force and dignity as a jury verdict; an appellate court reviews sufficiency challenges to findings of fact by the same standards we apply in reviewing a jury's findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). Defendants attack the legal sufficiency of the evidence supporting the liability findings of fact made by the trial court. When the party complaining of legal sufficiency did not have the burden of proof at trial, we conduct our review by considering only the evidence and inferences that support the finding and disregard contrary evidence and inferences. *Burroughs Wellcome Company v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). An appellate court will sustain a no-evidence point of error when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the only evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Uniroyal Goodrich Tire Company v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998).

Appellate courts review a trial court's conclusions of law de novo as legal questions. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). If the reviewing court determines that a conclusion of law is erroneous but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *BMC Software Belgium, N.V. v. Marchand, supra* at 794.

*Dooley's Liability Contentions*

While the law concerning preferential purchase rights appears to be settled, the application of these principles is difficult in a situation involving a package conveyance of multiple properties. The circumstances surrounding Dooley's claim illustrate this difficulty. Dooley's preferential purchase right only applied to the Dooley Lease. However, the conveyance agreed to by defendants and presented to Dooley for consideration included other leases in addition to the Dooley Lease. The conveyance was further complicated by the fact that the Hill and Johnson leases were also subject to preferential purchase rights held by third parties.

Dooley premises his claim on the assertion that he was not required to accept the

other leases in order to exercise his preferential purchase right. Relying upon this assertion, Dooley contends that the defendants did not present him with a valid offer because of their inclusion of the other leases in the offer they presented to him. Dooley contends that he was never required to undertake any actions prior to trial in order to exercise his preferential purchase right because of the defendants' alleged defective presentment. The thrust of Dooley's efforts at trial were directed at obtaining the trial court's assistance in enforcing his preferential purchase right. Dooley sought and obtained a determination from the trial court of the amount of consideration which McMillan and McClymond paid for only the Dooley Lease. The trial court awarded title to the Dooley Lease to Dooley based upon his subsequent tender of this amount.

### Did the Defendants Make a Sufficient Presentment to Dooley?

The initial issue to determine is whether the defendants sufficiently presented Dooley with an opportunity to exercise his preferential purchase right. The trial court determined that the defendants failed to provide Dooley with his preferential purchase right pursuant to the terms and provisions of the preferential purchase provision. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge attack this determination in their first point of error. McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom attack this determination in their second issue.

■■■■■ The U.S. Court of Appeals for the 5th Circuit addressed the guidelines applicable to the presentment of an offer to the holder of a preferential purchase right in *Koch Industries, Inc. v. Sun Company, Inc.*, 918 F.2d 1203, 1211–12 (5th Cir.1990). In interpreting Texas law on this subject, the court stated that the property owner has an initial duty to make a reasonable disclosure of the offer's terms. *Koch Industries, Inc. v. Sun Company, Inc.*, supra at 1212. The holder of the preferential purchase right then has a subsequent duty to undertake a reasonable investigation of any terms unclear to him. *Koch Industries, Inc. v. Sun Company, Inc.*, supra at 1212. The rightholder does not have a duty to act in order to exercise his preferential purchase right unless and until he receives a reasonable disclosure of the terms of the contemplated conveyance. *Koch Industries, Inc. v. Sun Company, Inc.*, supra at 1212.[13]

### The Express Terms of the Preferential Purchase Provision

■■■ Dooley asserts that the offer presented to him by the defendants was invalid because it did not comply with the express terms of the preferential purchase provision. The trial court agreed with Dooley's assertion by determining that the preferential purchase provision is a "binding price" agreement and not a "terms and conditions" agreement. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge attack the trial court's construction of the preferential purchase provision in their fourth point of error. McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom present a similar argument in their first issue.

---

13. We note that Dooley filed his claim within the applicable four-year limitations period for breach of contract actions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon 2002). We express no opinion as to the effect of the expiration of the applicable limitations period on a rightholder who has not been notified of a conveyance as required by the preferential purchase right.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Century Bass Club v. Millender,* 949 S.W.2d 841, 844 (Tex.App.-Waco 1997, writ den'd). To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 158 (Tex.1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Management Corporation,* 361 S.W.2d 193, 196 (Tex.1962). Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would be thereby defeated. *Century Bass Club v. Millender, supra* at 844–45.

The trial court entered several findings of fact and conclusions of law based upon the court's holding in *West Texas Transmission, L.P. v. Enron Corporation, supra.* The holder of a preferential purchase right in *West Texas Transmission* asserted that the owner of the property covered by the provision impermissibly added a condition to the terms of the contemplated conveyance which "effectively gutted" the preferential purchase right. *West Texas Transmission, L.P. v. Enron Corporation, supra* at 1561. In analyzing the rightholder's argument, the court stated as follows:

> The details of a particular [preferential purchase] right depend upon the contract between the parties. The terms of those contracts vary widely, and courts must scrutinize the parties' language to ascertain the scope of the [preferential purchase] right. Although some contracts specify the price at which the owner must sell the property, most contracts base the sale price and other terms of the rightholder's purchase contract on the bona fide offer made by a third party. (Citation omitted)

*West Texas Transmission, L.P. v. Enron Corporation, supra* at 1562.

As reflected in the above quotation, the court in *West Texas Transmission* made a distinction between a "price" agreement and a "terms and conditions" agreement. *West Texas Transmission, L.P. v. Enron Corporation, supra* at 1562. The preferential purchase provision at issue in *West Texas Transmission* permitted the rightholder to exercise its option "on the same terms and conditions as set forth in [a third party] offer or agreement to purchase." *West Texas Transmission, L.P. v. Enron Corporation, supra* at 1562–63. In construing this language, the court held that the preferential purchase provision did not restrict the property owner's "ability to strike its best deal and to require [the rightholder] to match that bargain." *West Texas Transmission, L.P. v. Enron Corporation, supra* at 1563. The court further noted that the contract did not contain any specific conditions which limited the terms of purchase which the property owner might negotiate with a potential purchaser. *West Texas Transmission, L.P. v. Enron Corporation, supra* at 1563.

Dooley argues that the preferential purchase provision at issue in this appeal is a "price" agreement rather than a "terms and conditions" agreement because the provision uses the word "price." He contends that the preferential purchase provi-

sion's use of the term "price" prevented McDonald from accepting anything other than a fixed sum of money as consideration for the Dooley Lease. We disagree with Dooley's restrictive construction of the term "price." While "price" obviously includes an amount of money, the common and ordinary meaning of "price" does not exclude non-monetary forms of consideration. "Price" is defined in BLACK'S LAW DICTIONARY 1207 (7th ed.1999) as "[t]he amount of money *or other consideration* asked for or given in exchange for something else; the cost at which something is bought or sold." (Emphasis added)

The court in *West Texas Transmission* characterized a "price" agreement as one which restricts the terms of conveyance which the property owner might strike with a potential purchaser. As noted by the court, an example of a "price" agreement would be one in which the preferential purchase provision specifies the price at which the right may be exercised. Other than Dooley's unduly restrictive construction of the term "price," the preferential purchase provision at issue does not contain any limitations on the bargain which McDonald might negotiate with a potential purchaser. We sustain McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's fourth point of error and McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom's first issue to the extent that they attack the trial court's interpretation of the preferential purchase provision.

### West Texas Transmission Factors

Dooley additionally contends that the defendants' inclusion of the other leases rendered their presentment defective because of the trial court's affirmative findings of the factors identified in *West Texas Transmission*. The court in *West Texas Transmission* addressed the circumstances under which the holder of a preferential purchase right could object to sale conditions which were not otherwise prohibited by the preferential purchase provision. The court stated as follows:

> [T]he owner of property subject to a [preferential purchase right] remains master of the conditions under which he will relinquish his interest, as long as those conditions are commercially reasonable, imposed in good faith, and not specifically designed to defeat the [preferential purchase] rights. Where the owner meets these three standards, the holder of the [preferential purchase right] lacks grounds to remove specific conditions from the contract, or to extract other concessions as part of the agreement. (Citations omitted)

*West Texas Transmission, L.P. v. Enron Corporation, supra* at 1563. The trial court made findings of fact to the extent that the defendants' offer of the package of leases to Dooley was: (1) not commercially reasonable; (2) not imposed in good faith; and (3) specifically designed to defeat Dooley's preemptive rights. Based upon these findings, the trial court determined that Dooley was not obligated to purchase the package of leases in order to exercise his preferential purchase right.

We do not believe that the factors identified in *West Texas Transmission* are controlling on the question of whether or not the defendants made a sufficient presentment to Dooley.[14] Rather than ad-

---

14. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge attack the legal sufficiency of the evidence supporting these findings in their twelfth point of error. We do not address their twelfth point of error in light of our determination that the *West Texas Transmission* factors are not controlling on the issue of presentment.

dressing the sufficiency of the property owner's presentment, the factors identified in *West Texas Transmission* deal with the manner in which the holder of the preferential purchase right may respond to the property's owner presentment in order to exercise the preferential purchase right. Furthermore, the facts at issue in *West Texas Transmission* are distinguishable from this appeal. *West Texas Transmission* dealt with a situation wherein the holder of the preferential purchase right objected to a condition of sale which it found to be unreasonable. *West Texas Transmission, L.P. v. Enron Corporation, supra* at 1561–63. The objectionable condition required the holder of the preferential right to obtain the approval of a federal agency in order to exercise its right to purchase a pipeline. *West Texas Transmission, L.P. v. Enron Corporation, supra* at 1561–62. *West Texas Transmission* did not deal with a package conveyance of multiple properties wherein some of the properties were not affected by the preferential purchase right. Therefore, the circumstances in *West Texas Transmission* are distinguishable from the facts in this case. Moreover, the factors identified in *West Texas Transmission* have not been unanimously embraced by Texas courts as a correct interpretation of Texas law. In *Abraham Investment Company v. Payne Ranch, Inc., supra* at 526–27, the Amarillo Court of Appeals criticized *West Texas Transmission* factors as being based upon the law of other jurisdictions rather than Texas law. Justice Murry B. Cohen also questioned *West Texas Transmission* purported interpretation of Texas law in a dissenting opinion in *Texas State Optical, Inc. v. Wiggins*, 882 S.W.2d 8, 12 (Tex. App.-Houston [1st Dist.] 1994, no writ).

### The Defendants Made a Sufficient Presentment to Dooley

 The inclusion of the other leases in the offer presented to Dooley did not violate the express terms of the preferential purchase provision with respect to the terms of conveyance to which McDonald and the purchasers could have agreed. Accordingly, we disagree with Dooley's contention that the defendants presented him with an invalid offer. The defendants made a sufficient presentment from a mechanical perspective if they made a reasonable disclosure of the terms of the contemplated conveyance to Dooley. *See Koch Industries, Inc. v. Sun Company, Inc., supra* at 1212. The preferential purchase provision required that the notification include the highest bona fide price offered. The provision further required the notification to be in writing and forwarded by registered mail. McMillan's letter of March 9, 1998, provided Dooley with notice of the material terms upon which McMillan and McClymond obtained the leases from McDonald. The letter also included the documents exchanged between McDonald and McMillan in negotiating the conveyance. The delivery of McMillan's letter of March 9, 1998, to Dooley conclusively establishes that the defendants made a reasonable disclosure of the terms of conveyance to Dooley.

### Comeaux v. Suderman

The Fourteenth Court of Appeals addressed many of the issues present in this appeal in *Comeaux v. Suderman*, 93 S.W.3d 215 (Tex.App.-Houston [14th Dist.] 2002, no pet'n). *Comeaux* is one of the few Texas cases that has considered the enforcement of a preferential purchase right in a package conveyance. The rightholder in *Comeaux* possessed a preferential purchase right to approximately one acre of real property which he leased in the operation of a public fishing pier. The owner of the leased property informed the rightholder of his intention to convey it

along with some adjoining acreage for $350,000.00. *Comeaux v. Suderman, supra* at 217–18. The rightholder initially advised the owner's agent that he would not exercise his preferential purchase right because he could not afford to pay $350,000.00. *Comeaux v. Suderman, supra* at 218. The property owner then conveyed the property to a third-party purchaser as contemplated. *Comeaux v. Suderman, supra* at 218.

The rightholder subsequently brought suit against the property owner and the third-party purchaser claiming a breach of the preferential purchase right. *Comeaux v. Suderman, supra* at 218. The holder of the preferential purchase right in *Comeaux* asserted that his obligation to exercise the right was never triggered because the property owner did not offer him the opportunity to purchase the leased premises only. *Comeaux v. Suderman, supra* at 219. This is essentially the same argument that Dooley makes with respect to his allegation that the defendants presented him with an invalid offer. The court held that a sufficient presentment occurred because the rightholder received notice of the proposed sale. *Comeaux v. Suderman, supra* at 219. The holding in *Comeaux* establishes that a sufficient presentment to the rightholder occurs even though the offer includes property not covered by the preferential purchase right in the offer presented to the rightholder.

We sustain McMillan, McClymond, FOAG, Inc., and First National Bank Albany/ Breckenridge's first point of error and McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom's second issue to the extent that they challenge the trial court's determination that defendants did not adequately provide Dooley with an opportunity to exercise his preferential purchase right.

### *The Effect of the Defendants' Presentment*

Dooley takes the position that he was not required to accept the other leases in order to exercise the right. He further contends that the inclusion of the other leases excused him from undertaking any action in order to retain his preferential purchase right. The trial court agreed with each of these contentions by determining that Dooley was entitled to exercise his preferential purchase right after trial. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge also attack this determination in their first point of error. McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom raise the same contention in their first and third issues. We agree with the trial court's determination that Dooley was not required to accept the other leases in order to exercise his preferential purchase right. However, we disagree with the ruling that Dooley continued to possess the opportunity to exercise his preferential purchase right at the time of trial.

### *Dooley Was Not Required to Accept the Other Leases in Order to Exercise his Preferential Purchase Right*

As noted previously, Dooley's preferential purchase right matured into an enforceable option when McDonald conveyed the leases to McMillan and McClymond. *A.G.E., Inc. v. Buford, supra* at 673. The exercise of an option is equivalent to the acceptance of an offer under contract law. *Texas State Optical, Inc. v. Wiggins, supra* at 10–11. As a general rule, an acceptance of an offer must not change or qualify the terms of an offer; and, if it does, the offer is rejected. *Texas State Optical, Inc. v. Wiggins, supra* at 10–11. With regard to an option, a purported acceptance containing a new de-

mand, proposal, condition, or modification of the terms of the offer ordinarily is not an acceptance; it is a rejection. *Texas State Optical, Inc. v. Wiggins, supra* at 10–11.

Dooley is essentially seeking to invoke an exception to the general rule which requires the holder of a preferential purchase right to accept all of the terms of a property owner's agreement with the third-party purchaser in order to exercise the preferential purchase right. Only a few Texas cases have addressed the enforcement of preferential purchase rights in a package conveyance. The court in *Hinds v. Madison,* 424 S.W.2d 61, 62 (Tex. Civ.App.-San Antonio 1967, writ ref'd n.r.e.), addressed a situation that is opposite to the facts surrounding Dooley's claim.

The rightholder in *Hinds* possessed a preferential purchase right to approximately 2,849.28 acres that were a part of a 14,818.63–acre ranch. *Hinds v. Madison, supra* at 62. The owners of the ranch entered into an agreement to convey the entire 14,818.63–acre ranch. *Hinds v. Madison, supra* at 62. Even though the rightholder only possessed a preferential purchase right to a portion of the ranch, he asserted that he should be able to exercise his right with respect to the entire ranch. *Hinds v. Madison, supra* at 64. The court rejected the rightholder's contention by stating as follows: "We do not see how in any way [the rightholder's] option or preference right to purchase a portion of the property sought to be sold can be enlarged to cover other lands owned by lessors, or can in any manner cover anything except the property actually subject to the option." *Hinds v. Madison, supra* at 64.

We agree with the reasoning employed by the court in *Hinds* and believe that it is applicable to this appeal. Assuming the defendants had only offered Dooley the opportunity to purchase the Dooley Lease, the court's holding in *Hinds* would have prevented him from seeking to exercise his preferential purchase right against the other leases in the conveyance. If a rightholder is not permitted to expand his preferential purchase right to include property not covered by the provision, it would be improper for him to be required to accept other property not covered by his preferential purchase right in order to exercise his right.[15] Furthermore, the fact that the Hill and Johnson Leases were subject to separate preferential purchase rights is another compelling reason for not requiring Dooley to accept the other leases in order to exercise his preferential purchase right to the Dooley Lease. Accordingly, we agree that Dooley possessed the right to exercise his preferential purchase right as to the Dooley Lease without having to accept the other leases.

### Dooley's Response to the Defendants' Presentment

 Under the terms of the preferential purchase provision at issue in this appeal, Dooley had 10 days after receiving written notice of the contemplated conveyance to exercise his preferential purchase right. Dooley responded within the 10–day time period with the letter from his attorney dated March 18, 1998. Dooley's attorney advised McMillan in the letter that the "offer to give Mr. Dooley the option to buy our lease and all of the other properties that were a part of the package with Mr. McDonald is hereby declined." The letter further indicated that Dooley

15. The court in *Comeaux* cited *Hinds* for the proposition that a holder of a preferential purchase right has neither the right nor the obligation to purchase more than the property covered by the provision. *Comeaux v. Suderman, supra* at 221 n. 2.

might be interested in discussing the acquisition of the Dooley Lease in the future.

In *Comeaux*, the rightholder advised the owner's agent that he would not exercise his preferential purchase right. *Comeaux v. Suderman, supra* at 218. The rightholder did not inquire about the specific terms and conditions of the proposed sale or whether he could purchase only the leased premises. *Comeaux v. Suderman, supra* at 218. The court determined that the rightholder's rejection of the offer at the time that it was offered to him prevented his subsequent attempt to exercise the right. *Comeaux v. Suderman, supra* at 219.

*Comeaux* is factually analogous to Dooley's situation because the offer presented to the rightholder included property not covered by the preferential purchase right. Unlike the rightholder in *Comeaux*, Dooley made inquires regarding the terms and conditions of the proposed sale of the leases. However, he subsequently informed McMillan that he declined to exercise the offer presented to him. This rejection occurred within the time period specified in the preferential purchase provision for exercising the right. Dooley made subsequent inquires regarding his interest in only purchasing the Dooley Lease, but these inquires occurred after the 10-day period expired.

The court determined in *Comeaux* that a rejection of a "package" offer prevented the right-holder's subsequent attempt to exercise the preferential purchase right as to the property covered by the right. Dooley's act of rejecting the offer presented to him leads to the same result. The presentment of a contemplated conveyance to a holder of a preferential purchase right triggers a duty upon the rightholder to act within the time period specified in the preferential purchase provision in order to exercise the right. *A.G.E., Inc. v. Buford,*

*supra* at 673. The rightholder's duty to act is an affirmative duty. The failure to act is tantamount to a rejection of the opportunity to exercise the preferential purchase right. *Comeaux v. Suderman, supra* at 220. The rightholder's "power of acceptance" does not continue indefinitely but terminates on the expiration of the specified time period. *A.G.E., Inc. v. Buford, supra* at 673; *Martin v. Lott, supra* at 922. The power of acceptance also terminates by express rejection or by conduct clearly inconsistent with an intention to purchase. *Martin v. Lott, supra* at 922. Acquiescence in a transfer made in violation of a preferential purchase right constitutes conduct inconsistent with an intention to purchase. *Martin v. Lott, supra* at 922.

While Dooley was not required to accept the other leases in order to exercise his preferential purchase right as to the Dooley Lease, he was required to take affirmative steps within the time period specified in the provision in order to preserve the viability of his option. Dooley's preferential purchase right expired when he expressly declined the offer presented to him by McMillan without taking any further action during the specified time period. Afterwards, Dooley did not file the underlying action to obtain the trial court's assistance in enforcing the preferential purchase provision until more than two years after being presented with the offer. Dooley did not exercise his preferential purchase right until after trial.

The court considered the timeliness of the exercise of an option to purchase an oil and gas property in *KMI Continental Offshore Production Co. v. ACF Petroleum Co.,* 746 S.W.2d 238 (Tex.App.-Houston [1st Dist.] 1987, writ den'd). The court determined that a delay of 20 months in exercising the option was unreasonable as a matter of law. *KMI Continental Off-*

*shore Production Co. v. ACF Petroleum Co., supra* at 243–44. The court stated as follows in reaching its holding: "The longer one delays in acting on an option concerning oil and gas property, the easier one is able to speculate on the value of the property at the other's expense." *KMI Continental Offshore Production Co. v. ACF Petroleum Co., supra* at 245. The propriety of this principle is readily apparent in this appeal given the dramatic rise in the price of natural gas which occurred after the conveyance.

Although *Texas State Optical* did not involve a package conveyance, it is instructive as to the type of response which Dooley should have made in order to preserve the viability of his preferential purchase right. *Texas State Optical, Inc. v. Wiggins, supra.* The rightholder in *Texas State Optical* objected to some of the terms of conveyance presented to it for acceptance by the property owner.[16] *Texas State Optical, Inc. v. Wiggins, supra* at 9–10. Even though the rightholder objected to some of the terms, it responded to the offer by the specified date by notifying the property owner that it intended to exercise its preferential purchase right subject to its objection to the disputed terms. *Texas State Optical, Inc. v. Wiggins, supra* at 10. The rightholder also filed a declaratory judgment action prior to the date specified for acceptance with regard to the disputed terms. *Texas State Optical, Inc. v. Wiggins, supra* at 10. The court determined that the righholder's actions constituted a sufficient exercise of its preferential purchase right. *Texas State Optical, Inc. v. Wiggins, supra* at 11.

*Riley v. Campeau Homes (Texas), Inc.,* 808 S.W.2d 184, 185 (Tex.App.-Houston [14th Dist.] 1991, writ dism'd by agr.), is another case involving the enforcement of a preferential purchase right in a package conveyance. In *Riley,* the rightholders were tenants of an individual condominium unit. The owner of the unit entered into an agreement to convey the unit along with several other properties to a third-party purchaser. *Riley v. Campeau Homes (Texas), Inc., supra* at 185. The material issue in the case was whether or not the preferential purchase right was triggered by the package conveyance. *Riley v. Campeau Homes (Texas), Inc., supra* at 185. The court determined that the rightholders could exercise their preferential purchase right even though the individual unit was to be conveyed in a package with other properties. *Riley v. Campeau Homes (Texas), Inc., supra* at 189. The rightholders in *Riley* responded to the package conveyance offered to them for acceptance by demanding that their right of first refusal be honored. *Riley v. Campeau Homes (Texas), Inc., supra* at 186. They also deposited $5,000.00 in earnest money as a tender of their intended performance. *Riley v. Campeau Homes (Texas), Inc., supra* at 186.

We sustain McMillan, McClymond, FOAG, Inc., and First National Bank Albany/ Breckenridge's first point of error. We also sustain McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom's first and third issues. In light of our determination that Dooley failed to timely exercise his preferential purchase right to purchase the Dooley Lease, we need not consider McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's second, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth points of error.

---

**16.** The rightholder asserted that the disputed terms were impermissible under the factors identified in *West Texas Transmission. Texas State Optical, Inc. v. Wiggins, supra* at 11.

### Smith's Liability Claim

█ The trial court entered the same findings of fact and conclusions of law with respect to the liability aspect of Smith's and Johnson's claims as it did with Dooley's claim. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge assert in their twenty-eighth point of error that the trial court erred in holding McMillan, McClymond, and FOAG, Inc. liable to Smith because they lack privity of contract with him. McMillan, McClymond, and FOAG, Inc. assert that, since they were not parties to the farmout agreement, they cannot be liable for the breach of the preferential purchase provision contained within the farmout agreement. We disagree with McMillan, McClymond, and FOAG, Inc.'s lack-of-privity contention.

The written assignment which transferred the Hill Lease to McMillan, McClymond, and FOAG, Inc. expressly provided that "[t]his assignment is made specifically subject to all of the terms and provisions of that certain Farmout Agreement dated May 7, 1976 between [Smith] and Ole Chaparral Oil & Gas." Therefore, McMillan, McClymond, and FOAG, Inc. expressly assumed responsibility for complying with the farmout agreement's obligations in the future. See Jones v. Cooper Industries, Inc., 938 S.W.2d 118, 124 (Tex.App.-Houston [14th Dist.] 1996, writ den'd), cert. den'd, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). At some point during their operation of the Hill Lease, McMillan, McClymond, and FOAG, Inc. elected to abandon the lease. McMillan, McClymond, and FOAG, Inc.'s decision to abandon the Hill lease triggered an obligation on their part to provide Smith with an opportunity to purchase the lease. This obligation was independent of the previous obligation which McDonald had to provide Smith with notice of the lease's conveyance. McMillan, McClymond, and FOAG, Inc. breached the preferential purchase provision when they did not inform Smith of their intent to abandon the Hill Lease. Accordingly, the trial court did not err in determining that McMillan, McClymond, and FOAG, Inc. breached the preferential purchase provision. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's twenty-eighth point of error is overruled.

In their thirty-first point of error, McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge assert that the evidence conclusively established that Smith's claim was barred by laches, waiver, and estoppel. Relying on evidence indicating that Smith was aware of the conveyance soon after it occurred, they argue that Smith waived his claim by waiting for more than three years prior to filing suit. We do not find that the evidence conclusively establishes the applicability of these affirmative defenses. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's contention only focuses on the initial breach of the preferential purchase provision which occurred when McDonald conveyed the lease without providing notice of the conveyance to Smith.[17] As noted in the previous paragraph, a second breach of the preferential purchase provision occurred when McMillan, McClymond, and FOAG, Inc. subsequently abandoned the lease without providing Smith with an opportunity to acquire it. This breach occurred closer in time to the date that Smith filed his claim. McMillan, McClymond, FOAG, Inc., and First Na-

---

17. With respect to the initial breach of the preferential purchase provision, Smith filed his claim within the applicable four-year limitations period for breach of contract actions. See TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon 2002).

tional Bank Albany/Breckenridge's thirty-first point of error is overruled.

McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's twenty-seventh, twenty-ninth, and thirtieth points of error also address Smith's liability claim. The twenty-seventh point of error attacks the factual sufficiency of the evidence supporting the trial court's determination that the preferential purchase right was breached as to Smith. The twenty-ninth point of error attacks the factual sufficiency of the evidence supporting the trial court's determination of the net fair market salvage value of the Hill Lease. The thirtieth point of error attacks the factual sufficiency of the evidence supporting the trial court's determination that McMillan, McClymond, and FOAG, Inc. intentionally terminated the Hill Lease for lack of production.

These three points of error have been waived in two respects. First, McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge have not briefed these points for our consideration. See TEX.R.APP.P. 38.1(h). Second, McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge have filed a document with the court indicating their waiver of all factual sufficiency points of error. Moreover, our review of the record indicates the existence of factually sufficient evidence to support these challenged findings. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's twenty-seventh, twenty-ninth, and thirtieth points of error are overruled.

*Johnson's Liability Claim*

The defendants attack Johnson's recovery by asserting that he no longer possesses the right to enforce the preferential purchase provision.[18] They base this contention on several conveyances made by Johnson after the execution of the farmout agreement affecting the Johnson Lease. It is necessary for us to review these conveyances in order to address the defendants' contention.

Johnson obtained the oil and gas lease for the five tracts of property comprising the Johnson Lease in August 1978. At the time that Johnson obtained the lease, the surface and mineral estates of the property were owned by himself, his mother, and another individual. Accordingly, Johnson was both a lessor and lessee in the lease. The resolution of the issue before us is complicated by Johnson's dual capacities in the lease.

▮ As an owner of the mineral estate, Johnson possessed five interests: (1) the right to develop, (2) the right to lease, (3) the right to receive bonus payments, (4) the right to receive delay rentals, and (5) the right to receive royalty payments. *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex.1995); *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986). By executing the lease, Johnson and the other lessors granted a fee simple determinable interest in the mineral estate to Johnson as the lessee/grantee of the lease. *Natural Gas Pipeline Company of America v. Pool*, 124 S.W.3d 188, 192 (Tex.2003). In his capacity as the lessee, Johnson acquired ownership of all the minerals in place owned by the lessors, subject to the possibility of reverter back to the lessors or their successors-in-interest. *Natural*

---

18. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge present this complaint in their nineteenth point of error. McDonald, McDonald Invest-ments, Inc., and Ole Chaparral on Possum Kingdom make this assertion in their fifth issue.

*Gas Pipeline Company of America v. Pool, supra* at 192. In his capacity as a lessor, Johnson only retained the right to receive royalty payments and the right to receive delay rentals during the duration of the lease.

Johnson executed the farmout agreement affecting the Johnson Lease in his capacity as the lessee of the lease. Under the terms of the farmout agreement, Johnson granted McDonald the right to earn an assignment of the lease if McDonald successfully obtained production from the leased acreage. Johnson also reserved a preferential purchase right in the farmout agreement. Johnson's authority for reserving the preferential purchase right in the farmout agreement arose from his capacity as the lessee of the lease. In the typical oil and gas lease, the lessee does not own a preexisting interest in the mineral estate.[19] Johnson could have reserved the preferential purchase right in the farmout agreement even if he had not owned a preexisting interest in the mineral estate.

Pursuant to the terms of the farmout agreement, Johnson assigned the lease to McDonald Investments, Inc. in a written assignment dated March 6, 1979. As a result of the assignment, McDonald Investments, Inc. succeeded Johnson as the lessee under the lease. Johnson, in his capacity as the original lessee of the lease, reserved in the assignment a one-eighth overriding royalty interest. Additionally, the assignment expressly stated that it was made subject to the terms of the farmout agreement. The assignment's reference to the farmout agreement essentially constituted a recognition by the parties of the preferential purchase right which Johnson reserved in the farmout agreement. Accordingly, upon the assign-

ment of the lease to McDonald Investments, Inc., Johnson possessed the following interests: (1) in his capacity as the original lessee of the lease, Johnson possessed a one-eighth overriding royalty interest and the preferential purchase right and (2) in his capacity as a lessor of the lease, Johnson possessed the right to receive royalty payments and delay rentals and the possibility of reverter with respect to the ownership of the mineral lease subject to the duration of the lease.

On May 15, 1979, Johnson and his mother conveyed their ownership interest in only the surface estate of the southern three tracts of the five tracts comprising the Johnson Lease to McDonald Investments, Inc. On June 2, 1983, Johnson and his mother conveyed their ownership interest in the surface and mineral estates of the northern two tracts of the five tracts comprising the Johnson Lease to Billy Fred Akers. In this deed to Akers, Johnson specifically reserved the one-eighth overriding interest previously reserved in the assignment between Johnson and McDonald Investments, Inc. Also, on June 2, 1983, Johnson and his mother conveyed their ownership interest in the mineral estate of the southern three tracts of the five tracts comprising the Johnson Lease to Akers. As a result of these conveyances, Johnson no longer owned any part of the surface or mineral estates of the five tracts comprising the Johnson Lease. On April 1, 1992, Johnson conveyed his one-eighth overriding royalty interest to John C. Nabors.

 The issue we must resolve is whether or not Johnson continued to possess the preferential purchase right after the subsequent conveyances referenced in the preceding paragraph. None of the

---

19. We use the term "preexisting" to indicate that Johnson possessed an ownership interest

in the mineral estate prior to obtaining the lease.

conveyance documents contained any reference to the preferential purchase right. A deed will be construed to confer upon the grantee the greatest estate that the terms of the instrument will permit. *Lott v. Lott*, 370 S.W.2d 463, 465 (Tex.1963); *Waters v. Ellis*, 158 Tex. 342, 312 S.W.2d 231, 234 (Tex.1958). The defendants rely upon this rule to argue that Johnson no longer possesses the preferential purchase right because he did not specifically reserve it in any of the conveyances. They contend that Johnson conveyed the preferential purchase right to Akers when Johnson conveyed the mineral estate to him. The defendants also cite the holding in *Stone v. Tigner*, 165 S.W.2d 124, 127 (Tex. Civ.App.-Galveston 1942, writ ref'd), wherein the court held that a right of first refusal to purchase real property is a covenant running with the land. In reliance upon this holding, the defendants argue that Johnson can no longer possess the preferential purchase right because he no longer possesses a real property interest in the Johnson Lease.

■ We disagree with the defendants' contention that Johnson no longer possesses the preferential purchase right he reserved in the farmout agreement. Johnson's situation is unique because he was both a lessor and lessee in the lease. His status as a lessor arose by virtue of his preexisting ownership interest in the mineral estate. The ownership interests which Johnson subsequently conveyed to McDonald Investments, Inc. and Akers were his preexisting ownership interests in the surface and mineral estates.[20] In rela-

tion to the lease, the interests which Johnson subsequently conveyed to McDonald Investments, Inc. and Akers were his interests as a lessor to the lease as opposed to his interests arising from his capacity as a lessee of the lease. Johnson reserved the preferential purchase right in the farmout agreement in his capacity as the lessee of the lease. We do not believe that the conveyance of interests which Johnson possessed in his capacity as a lessor also included an interest which arose from his capacity as a lessee of the lease. The granting clauses of the conveyance instruments only referenced Johnson's real property interests.[21] Accordingly, the terms of the instruments will not permit a construction that Johnson also conveyed a contractual right affecting the property. *Lott v. Lott, supra* at 465; *Waters v. Ellis, supra* at 234.

We agree with the defendants' contention that the preferential purchase right is a covenant running with the land. *Stone v. Tigner, supra* at 127. The practical effect of the right being a covenant running with the land is that McMillan, McClymond, and FOAG, Inc. were bound by the preferential purchase provision upon obtaining the Johnson Lease. However, we disagree with the assertion that Johnson was required to own a real property interest in order to enforce the right. By the terms of the farmout agreement and the written assignment of the lease from Johnson to McDonald Investments, Inc., the parties were aware that Johnson would not be possessing a real property interest in his capacity as the original lessee of the lease after the assignment oc-

---

**20.** We use the term "subsequently" to denote the conveyances occurring after Johnson assigned the lease to McDonald Investments, Inc.

**21.** The granting clauses in the deeds to McDonald Investments, Inc. and Akers stated that Johnson conveyed "all that certain lot, tract or parcel of land," "all of the following described real property," and "all of our undivided interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land."

curred. We are unwilling to impose a requirement which is contrary to the intentions of the parties as evidenced in the documents that created the preferential purchase right. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's nineteenth point of error and McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom's fifth issue are overruled.

McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge attack the factual sufficiency of the evidence supporting Johnson's recovery in their twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth points of error. They have indicated in their brief that these points are contingent upon the court sustaining their nineteenth point of error. Accordingly, since we have overruled McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's nineteenth point, we need not consider their twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth points of error.

### Attorney's Fees

McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's thirty-second point of error attacks the trial court's award of attorney's fees to Dooley. The trial court awarded Dooley attorney's fees for work performed through trial in the amount of $44,500.00. The trial court also awarded appellate attorney's fees to Dooley in the aggregate amount of $17,500.00. The trial court found that these awards were equitable and just.

A trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just" in a declaratory judgment proceeding. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 37.009 (Vernon 1997). The grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing of abuse of discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge contend that the trial court abused its discretion in awarding attorney's fees to Dooley because he should not have prevailed at trial. However, the fact that Dooley should not have prevailed at trial does not necessarily resolve the issue of attorney's fees. A trial court may, in its discretion, award attorney's fees to the nonprevailing party in a declaratory judgment action. *State Farm Lloyds v. Borum*, 53 S.W.3d 877, 894 (Tex.App.-Dallas 2001, pet'n den'd).

As was the case in *Borum*, we have determined that the trial court erred in resolving the issue of liability in favor of Dooley. *State Farm Lloyds v. Borum, supra* at 894. Even though the trial court could have awarded attorney's fees to Dooley as a nonprevailing party, the record does not indicate whether the award of Dooley's attorney's fees would also be equitable and just in light of our holding. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's thirty-second point of error is sustained in part. The trial court's award of attorney's fees to Dooley is reversed and remanded to the trial court for consideration in light of this opinion.

McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge raise the issue of the trial court's denial of their request for attorney's fees with respect to Dooley's claim in their thirty-fifth point. We have determined that McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge

should have prevailed on Dooley's claim. For the same reason that we are reversing and remanding the award of attorney's fees to Dooley, the trial court's denial of McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's request for attorney's fees with respect to Dooley's claim is reversed and remanded to the trial court for consideration in light of our holding. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's thirty-fifth issue is sustained in part. Upon remand, the trial court may award costs and reasonable attorney's fees as are equitable and just to either Dooley or McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge with respect to Dooley's claim.

McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge attack the award of attorney's fees to Smith and Johnson in their thirty-third and thirty-fourth points of error, respectively. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's thirty-sixth and thirty-seventh points of error challenge the trial court's denial of their attorney's fees with respect to Smith's and Johnson's claims. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge premise their argument under these points of error on the contention that they should have prevailed on Smith's and Johnson's claims. We have determined that the trial court did not err in entering judgment in favor of Smith and Johnson. The trial court's award of attorney's fees to Smith and Johnson is supported by our determination that they were entitled to prevail on their claims. The trial court's award of attorney's fees with respect to Smith's and Johnson's claims were not arbitrary or capricious. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's thirty-third, thirty-fourth, thirty-sixth, and thirty-seventh points of error are overruled.

### McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's Miscellaneous Points of Error

McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge assert in their thirty-eighth point of error that the trial court erred in rendering judgment in favor of Dooley, Smith, or Johnson based upon the statute of frauds. It is not necessary for us to consider this point of error in light of our previous holdings. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge globally assert in their thirty-ninth point of error that the trial court erred in not entering the additional and amended findings of fact which they submitted. McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge have not adequately briefed this issue for our consideration, thereby waiving the contention. *See* Rule 38.1(h). McMillan, McClymond, FOAG, Inc., and First National Bank Albany/Breckenridge's thirty-ninth point of error is overruled.

### Dooley & Johnson's Appellate Issues

Dooley and Johnson bring six issues attacking the trial court's findings that McMillan, McClymond, and FOAG, Inc. had an honest and reasonable belief in the superiority of their title to the Dooley and Johnson Leases over Dooley's and Johnson's respective claims to the leases. These "good faith trespasser" findings permitted McMillan, McClymond, and FOAG, Inc. to deduct the operating costs they incurred from the recoveries obtained by Dooley and Johnson. Dooley and Johnson's first, third, and fifth issues address Dooley's claim. Their second, fourth, and sixth issues address Johnson's claim.

The trial court's findings that McMillan, McClymond, and FOAG, Inc. were good faith trespassers are based on the court's previous determinations that they were, in fact, trespassers. McMillan, McClymond, and FOAG, Inc. argue that they were not trespassers as a matter of law because they took possession of the Dooley and Johnson Leases pursuant to the written assignments of leases granted in their favor from McDonald. Trespass has been defined as unlawful interference with one's person, property, or rights. *See First National Bank of Eagle Pass v. Levine,* 721 S.W.2d 287, 289 (Tex.1986). With respect to Dooley's issues, we have determined that his preferential purchase right expired. Accordingly, McMillan, McClymond, and FOAG, Inc. were not trespassers as a matter of law as to Dooley because Dooley did not possess a property interest in the Dooley Lease which could be subject to trespass. Dooley and Johnson's first, third, and fifth issues are overruled.

The trial court's determination that McMillan, McClymond, and FOAG, Inc. committed a trespass on the Johnson Lease presents a more difficult question to resolve. We have sustained the trial court's finding that the preferential purchase provision was breached as to Johnson. The trial court found that McMillan, McClymond, and FOAG, Inc. purchased the Johnson Lease from McDonald for zero consideration. In making this determination, the trial court essentially found that Johnson should have been given the opportunity to obtain the Johnson Lease without paying anything for it. Johnson sought and obtained the remedy of specific performance whereby he obtained ownership of the Johnson Lease free of cost. The trial court also awarded Johnson all of the net revenue derived from the Johnson Lease since the conveyance in the amount of $10,122.43. Dooley and Johnson con-

tend in their second and sixth issues that the trial court's good faith trespasser determination as to the Johnson Lease is not supported by legally or factually sufficient evidence. They contend in their fourth issue that the trial court erred in reducing Johnson's recovery by the costs which McMillan, McClymond, and FOAG, Inc. incurred in operating the Johnson Lease.

Even though Johnson's preferential purchase right was breached, he did not have a sufficient interest in the property to assert a claim for trespass. The gist of an action for trespass to realty is the injury to the right of possession. *Pentagon Enterprises v. Southwestern Bell Telephone Company,* 540 S.W.2d 477, 478 (Tex. Civ.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.). Prior to obtaining relief from the trial court, Johnson did not possess a right of possession with respect to the Johnson Lease. The court in *Pentagon Enterprises* addressed a similar situation. The plaintiff asserting the trespass claim in *Pentagon Enterprises* was a vendee under an executory contract. *Pentagon Enterprises v. Southwestern Bell Telephone Company, supra* at 478. While the plaintiff obviously had some rights in the property, it did not have a right of possession to the property at the time the trespass was alleged to have occurred. *Pentagon Enterprises v. Southwestern Bell Telephone Company, supra* at 478. The court upheld the denial of the plaintiff's claim as a result of its lack of the right of possession. Dooley and Johnson's second, fourth, and sixth issues are overruled.

### This Court's Decision

The trial court's judgment awarding Dooley title to the Dooley Lease is reversed and rendered in favor of McMillan, McClymond, and First National Bank Albany/Breckenridge. The trial court's judgment permitting Dooley to designate

the operator of the Dooley Lease is also reversed and rendered. Furthermore, the trial court's judgment terminating any contracts entered into by defendants regarding the Dooley Lease is reversed and rendered. The trial court's judgment awarding title to and possession of all equipment on the Dooley Lease to Dooley is also reversed and rendered. Finally, the trial court's judgment awarding Dooley all future proceeds of oil and gas produced from the Dooley Lease is reversed and rendered.

The trial court made a division of the revenue previously generated from the Dooley Lease. The trial court awarded $102,517.00 of this past revenue to McMillan, McClymond, and First National Bank Albany/Breckenridge to complete the purchase of the Dooley Lease. The remaining amount of past revenue was awarded to Dooley as well as all future revenue generated from the Dooley Lease. We have determined that Dooley was not entitled to receive any revenue generated from the lease arising from the preferential purchase provision. The trial court's award of any revenue generated from the Dooley Lease to Dooley is reversed, and the issue of the amount of revenue from the Dooley Lease owed to McMillan, McClymond, and First National Bank Albany/Breckenridge is remanded to the trial court for an accounting and distribution.

The trial court's award of attorney's fees to Dooley as well as the trial court's denial of attorney's fees to McMillan, McClymond, FOAG, Inc., and First National Bank Albany/ Breckenridge with respect to Dooley's claim are reversed and remanded.

The remainder of the trial court's judgment is affirmed.