Pat POUNDS, Alvin Community College District, Alvin Independent School District, The City of Alvin, The City of Manvel, and Brazoria County, Appellants,

v.

Megan L. JURGENS and Judy Piper Leahy, Appellees.

No. 14–07–00830–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 18, 2009.

Rehearing En Banc Overruled Nov. 19, 2009.

Michael C. Whalen, Houston, TX, Peter William Low, Austin, TX, for appellants.

A.G. Crouch, Alvin, TX, for appellees.

Panel consists of Justices YATES, SEYMORE, and BOYCE.

## OPINION

CHARLES SEYMORE, Justice.

This is an appeal from a final summary judgment in which the trial court (1) declared that a 1986–87 judgment of foreclosure and tax sale were void to the extent the judgment and sale conveyed the mineral interest and royalty interest in an approximately twenty-acre parcel of land ("the subject land"); (2) declared that a 1998 Deed Without Warranty, which conveyed the subject property to the appellant, Pat Pounds, was void to the extent the deed conveyed the mineral interest and royalty interest to Pounds; (3) rendered judgment against Pounds regarding the mineral ownership and royalty interest of the subject property; and (4) rendered judgment in favor of appellees, Megan L. Jurgens and Judy Piper Leahy ("appellees"), confirming their mineral ownership and royalty interest in and to the subject property.

We conclude the summary judgment proof established that (1) taxes were delinquent on the surface estate only, and not on the royalty interest, (2) the tax sales were authorized only on the surface estate and appellees' possibility of reverter, and (3) the tax code did not preclude appellees from defending against the interpleader action or claiming for modification of the foreclosure and sale of their royalty interest. Accordingly, we modify the judgment by deleting the portions of the judgment decreeing the prior judgment and tax sales

are void with regard to appellees' "mineral interest" (here, the possibility of reverter) but retain those portions decreeing that the prior judgment and tax sales are void with regard to the royalty interest. We affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Three generations ago, Nellie Lewellen owned the subject land.[1] In 1929, Lewellen executed an oil and gas lease with R. Wagner, as lessee, and covering the subject land, situated in Brazoria County. Under the lease, Lewellen "grant[ed], demise[d], lease[d] and let" to Wagner, "for the sole and only purpose of mining and operating for oil, gas and sulphur and laying pipe lines, and building tanks, power stations and structures thereon to produce, save and take care of said products" on the subject property.[2] The parties agreed the lease would "remain in effect for a term of five years from October 12, 1929, and as long thereafter as oil, gas or sulphur, or either of them, is produced by said land . . . or operations [were] reasonably pro-

gressing." In consideration, Wagner agreed, inter alia, to deliver to the Lewellens' credit one eighth of all "oil produced and saved from the leased premises," and to pay the Lewellens' "one-eighth of the sum received for the gas from each well where gas only is found . . . ."

Appellees are Lewellen's great grandchildren and heirs of Lewellen's granddaughter, Jane Jones Cunningham. SETEX Oil Company, L.P. ("SETEX") is the successor-in-interest to Wagner.

From 1983 to 1986, various Brazoria County taxing units sought foreclosure of tax liens on, and sale of, the subject land.[3] In its original petition, Alvin Independent School District listed the account and abstract as "Account 27135 ABST 402 LTS 14–15 SURFACE ONLY ACH & B." Alvin ISD's amended petition and the City of Alvin's second amended petition show the same account number, but do not contain the "SURFACE ONLY" designation.[4] In all three petitions, the named defendants were Nellie (or Nellia) Lewellen and L.E. Jones.[5] Service was by publication. Nel-

---

1. The subject land is described as

   Lots 14 and 15, 20 Acres, Abstract 402, Section 91, ACH & B, being the same property more particularly described in Volume 257, Page 614, and Volume 215, Page 118 Deed Records, Brazoria County, Texas, to which reference made for a more complete description.

2. The 1929 lease is not part of the appellate record. The language is found in a 1932 ratification of the lease by Nellie and her husband, Arthur Lewellen.

3. The following taxing units were cross-defendants below and filed a notice of appeal: Alvin Community College District, Alvin Independent School District, the City of Alvin, the City of Manvel, and Brazoria County. We refer to them jointly as the "taxing units."

4. In its responses to requests for admissions, Brazoria County admitted the county had a

separate tax account for the surface estate in the land by at least 1993. It also admitted the "mineral account" for the subject property for 1991 was in Jane J. Cunningham's name and was transferred to Jurgens's and Leahy's names after the 1991 statement. Finally, Brazoria County admitted taxes on the "mineral account" were not delinquent from 1993 through 1999. It is clear from the context and the "RI" designation on the account statements, that Brazoria County was using "mineral interest" to refer to the royalty interest.

5. Appellees submitted the file of Attorney Jerry Shiever, who represented the taxing units. That filed contained an unsigned affidavit for citation by publication and a signed certificate of last known mailing address. Both list Lewellen and Jones as defendants. In the former, Shiever represents that no defendants live outside Texas; in the latter, that Lewellen and Jones's address is in Hannibal Missouri.

lie Lewellen had died in 1935.[6] Her daughter, Lillian E. Lewellen Jones, had died in 1967. In 1978, Lillian's daughter, Jane Jones Cunningham had, by recorded deed, conveyed a portion of the subject land to the State of Texas, specifically excepting the mineral rights.[7]

The taxing units recovered judgment against "Nellie Lewellen and L.E. Jones," and the court ordered sale of the subject land. On April 29, 1987, the subject land was deeded to the City of Alvin, in trust, for itself, the Alvin Independent School District, the Alvin Community College District, and Brazoria County. The deed was filed June 8, 1987.

In 1998, in consideration for the sum of $14,790 and by means of a Deed Without Warranty, the taxing units conveyed the subject land to Pounds. By 2000, both Pounds and appellees were claiming land-owner's royalties from SETEX. Brazoria County admits that, before deeding the subject property to Pounds, it sent Jurgens a receipt for taxes paid on property with the legal description of "LEASE 007220 LEWELLYN [sic] NELLIE # 2, SOUTHEAST TEXAS OIL & GAS, RI 0.0468750, A0402 (A C H & B), 20.000 ACRES."

In 2000, SETEX deposited the landowner's royalty in the court's registry and initiated the present lawsuit by filing a petition in interpleader naming Pounds and appellees as defendants. Pounds and appellees answered and filed claims against each other. Appellees also claimed against Brazoria County, requesting that it execute a new deed which excepted the mineral royalties. Appellees subsequently amended their pleading to add a petition for bill of review in which they asserted neither they nor Cunningham, their mother, had been served in the delinquent tax suit that gave rise to the 1987 tax sale.

Pounds and appellees filed numerous motions for summary judgment. The taxing units filed a response and letter in support of Pounds's pleadings and motions. The court granted appellees' motion and denied Pounds's. The judgment provides in relevant part:

**IT IS THEREFORE ORDERED** that:

1. Judgment is rendered that the Tax Sale conducted by Brazoria County, for Alvin Independent School District and the City of Manvel, and Alvin Community College District, that took place on or about April 7, 1987 for the mineral interest and the royalty interest to the property described herein below is **VOID.**

*Property Description:* Lots, 14 and 15, 20 Acres, Abstract 402, Section 91, ACH & B, being the same property more particularly described in Volume 257, page 814 and Volume 215, page 118, [ ] Deed Records Brazoria County, Texas, to which reference is made for a more complete description.

---

6. Oddly, however, the record contains a copy of a recorded deed executed on April 30, 1936, in which Nellie Lewellen purported to deed a right of way to a portion of the subject land to Brazoria County for purposes of constructing a road. The deed contains the recitation, "It is understood that all mineral rights are reserved by the Grantor." Although Nellie Lewellen is named as the Grantor, Lillian E. Jones and Arthur L. Lewellen appear to have executed the deed.

7. In that deed, Cunningham had reserved "all of the oil, gas and sulphur in and under the land herein conveyed … [but] nothing in this reservation shall affect the title and rights of the State to take and use all other minerals and materials thereon, therein and thereunder." In the accompanying affidavit of heirship, Cunningham stated, "I am authorized to grant and sell all fee simple right [sic], title, or interest except minerals to any or all of said property."

2. Judgment is rendered in favor of the Movants Megan Jurgens and Judy Piper Leahy, confirming that the Judgment in the Tax Suit, Cause No. 83G1814, *City of Alvin v. Lewellen, Nellie, et al.,* In the District Court, 239th judicial district, of Brazoria County, Texas as it relates to the mineral interest and the royalty interest is **VOID.**

3. Judgment is rendered that the Deed Without Warranty for the sale of the property described hereinabove, conveying the property to Pat Pounds in April 1998, Brazoria County Official Recording Number 98–016452, as to the mineral, interest and royalty interest is **VOID.**

4. Judgment against, Defendant Pat Pounds as to the mineral ownership of lots 14 and 15 Abstract 402, Section 91, ACH & B RR Survey.

5. Judgment against, Defendant Pat Pounds as to the royalty interest of lots 14 and 15 Abstract 402, Section 91, ACH & B RR Survey.

6. A Judgment is rendered in favor of Megan Jurgens, and Judy Piper Leahy confirming their mineral ownership and royalty interest in and to the described property more fully described hereinabove.

7. All funds held in the registry of the court, together with all funds deposited in the registry of the court in the future, are **ORDERED** held in the registry of the court until further order of this court.

8. Judgment is rendered in favor of Defendants Megan Jurgens and Judy Piper Leahy, for the Costs of Suit; and

9. Movants, Jurgens and Leahy, will be granted such other relief, special or general, at law or in equity, as may be shown that Movants are justly entitled to receive.

This judgment is final and is appealable and finally disposes of all parties and all claims.

Pounds and the taxing units filed notices of appeal. Appellees did not.

## II. ISSUES PRESENTED AND STANDARD OF REVIEW

In issue one, Pounds argues the trial court erred in rendering judgment that the 1987 deed from the sheriff's sale, which resulted from the 1986 tax foreclosure judgment, did not convey the mineral estate and the royalty interest in the subject property to the City of Alvin. In issue two, she argues the same error in the court's judgment regarding the 1998 Deed Without Warranty from the City of Alvin to her. As part of issue two, Pounds sets forth several procedural bars to appellees' assertion of their rights to the mineral and royalty interests. In short, Pounds argues the trial court erred in granting appellees' motion for summary judgment and denying Pounds's motion for summary judgment.[8]

8. The taxing units observe, "Although named in the Judgment, Taxing Units are not real parties in interest, but have participated in the litigation and have filed briefs in support of the arguments raised by Appellant Pat Pounds." The taxing units set forth the following three issues:

A. THE TRIAL COURT ERRED BY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOR THE FOLLOWING REASONS:
  1. The trial court erred by ordering that the tax sale of the subject property in this case that took place on or about April 7, 1987 and conducted by Taxing Units was void as to the mineral interest and the royalty interest.
  2. The trial court erred by ordering that the Judgment foreclosing the lien against

Under well-established standards governing a traditional motion for summary judgment, the movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* When, as in this case, both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties, determine all questions presented, and render the judgment the trial court should have rendered. *Id.*

## III. ANALYSIS

### A. *Introduction*

The dispositive issue in this case is whether a tax foreclosure judgment and an order of sale, which arise from delinquent tax accounts on the surface estate of the described property, but not on the royalty interest resulting from an effective mineral lease on the property, for which no taxes are owing, give the sheriff authority to sell the royalty interest. For the reasons below, we conclude they do not. Given our conclusion that the initial judgment of foreclosure and sale did not extend to the royalty interest, we further conclude there is no procedural bar to appellees' defending against the interpleader petition and asserting their rights to the royalty interest. As discussed below, this conclusion is limited to the royalty interest and does not apply to the possibility of reverter in the mineral estate.

### B. *Scope of the 1986 Judgment of Foreclosure and 1987 Tax Sale*

It is undisputed that (1) Lewellen executed an oil and gas lease to Wagner in 1929, (2) the lease provided Lewellen was to receive a royalty from Wagner, (3) the lease remained in effect until the date of the present lawsuit initiated by Wagner's successor in interest, SETEX, and (4) appellees are Lewellen's successors in interest. It is also undisputed that (1) the taxing units maintained a separate account for taxes on the Lewellen royalties, (2) the separate account was not delinquent at the time of the judgment of foreclosure and tax sale, and (3) Lewellen's successors continued to pay taxes on the royalty interest.

the subject property in the tax suit referred to in the Order granting Appellees' Motion for Summary Judgment was void.

3. The trial court erred by ordering that the deed without warranty for the sale of the subject property, conveying the property to Appellant Pat Pounds in April, 1998, was, as to the mineral interest and royalty interest, void.

B. THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT AGAINST PAT POUNDS AND IN FAVOR OF APPELLEES REGARDING MINERAL AND ROYALTY INTEREST OWNERSHIP OF THE PROPERTY IN DISPUTE.

C. THE TRIAL COURT ERRED BY FAILING TO GRANT PAT POUNDS' MOTION FOR SUMMARY JUDGMENT BECAUSE THE RECORD OF THIS CASE ESTABLISHES AS A MATTER OF LAW THAT:

1. The mineral estate underlying the foreclosed surface acreage has not been severed from the surface;

2. The mineral estate underlying the surface acreage was therefore subject to the order of foreclosure and subsequent sale to Pat Pounds pursuant to the delinquent tax suit collection process; and

3. The royalty interest and reversionary interest in the mineral estate underlying the foreclosed surface acreage are owned by Pat Pounds.

■ In Texas, minerals in place are realty and, as such, are subject to ownership, severance, and sale. *Hager v. Stakes,* 116 Tex. 453, 471, 294 S.W. 835, 842 (1927). A grant or reservation of mineral interests by the fee owner effects a horizontal severance and creates two separate and distinct estates: an estate in the surface and an estate in the minerals. *Acker v. Guinn,* 464 S.W.2d 348, 352 (Tex. 1971). Moreover, as the supreme court explained in *Natural Gas Pipeline Co. of America v. Pool:*

> In Texas it has long been recognized that an oil and gas lease is not a "lease" in the traditional sense of a lease of the surface of real property. In a typical oil or gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who is actually a grantee. Consequently, the lessee/grantee acquires ownership of all the minerals in place that the lessor/grantor owned and purported to lease, subject to the possibility of reverter in the lessor/grantor. The lessee's/grantee's interest is "determinable" because it may terminate and revert entirely to the lessor/grantor

upon the occurrence of events that the lease specifies will cause termination of the estate.

124 S.W.3d 188, 192 (Tex.2003) (citations omitted).

■■ Thus, the mineral estate may be severed from the surface estate not only by a grant of the minerals in a deed or reservation in a conveyance, but also by grant in a lease. *Moser v. U.S. Steel Corp.,* 676 S.W.2d 99, 101 (Tex.1984). When, as here, the lessor reserves only a royalty interest, the lessee acquires title to all of the oil and gas in place, and the lessor owns only a possibility of reverter and has the right to receive royalties. *Pool,* 124 S.W.3d at 192. As distinguished from a mineral interest, the royalty interest is a non-possessory interest. *Id.*[9]

■ The lessor's right to receive royalties is nevertheless considered an interest in real property and is taxable as such. *See Sheffield v. Hogg,* 124 Tex. 290, 298–99, 77 S.W.2d 1021, 1024 (1934). The royalty interest created by leases similar to the 1929 Lewellen lease to Wagner in the present case was meant to benefit the

9. "A mineral estate consists of five interests: 1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments." *French v. Chevron U.S.A. Inc.,* 896 S.W.2d 795, 797 (Tex. 1995). A party conveying a mineral estate need not dispose of all interests, but may hold back or reserve individual interests. *Id.* "However, '[w]hen an undivided mineral interest is conveyed, reserved, or excepted, it is presumed that all attributes remain with the mineral interest unless a contrary intent is expressed.'" *Id.* (citation omitted).

   In *Concord Oil Co. v. Pennzoil Exploration and Production Co.,* the supreme court explained:
   Under a typical lease providing for a 1/8 royalty, the lessor may think that the interest retained is 1/8 of the minerals including 1/8 of the royalties. This misconception is evidenced in a few decisions. *See, e.g.,*

[*Tipps v. Bodine,* 101 S.W.2d 1076, 1078 (Tex.Civ.App.-Texarkana 1937, writ ref'd)] (lessor of mineral interest "retained one-eighth of all the minerals in place, subject to the lease"); [*Jupiter Oil Co. v. Snow,* 819 S.W.2d 466, 468–69 (Tex.1991)] (citing and following *Tipps* on this point). In actuality, a lease conveys a fee simple determinable with the possibility of reverter. When the lessor owns all the mineral estate (8/8) and executes an oil and gas lease, the lessor has conveyed all the mineral estate (8/8) but has retained a possibility of reverter in the entire mineral estate (8/8). *See generally* [*Luckel v. White,* 819 S.W.2d 459, 464 (Tex. 1991)]. The lessor also receives, of course, all rights that are bargained for in connection with the lease, which usually include the payment of royalties, delay rentals, and bonuses.
966 S.W.2d 451, 460 (Tex.1998).

owner of the estate in the land and to run permanently with the land. *See id.* at 300, 77 S.W.2d at 1025. Thus, under *Sheffield*, although the effect of the lease in the present case was to sever the mineral estate from the surface estate, the royalty interest deriving from the lease of the mineral estate, initially stayed with the land.[10] The same was true of the possibility of reverter. *See* A.W. Walker, Jr., *The Nature of the Property Interests Created by an Oil and Gas Lease in Texas*, 7 Tex. L. Rev. 1, 9 (1928) (stating after execution of typical oil and gas lease "owner of the surface estate" has the possibility of reverter in the oil and gas estate).

■ Appellees or their predecessors, however, could have conveyed the land and retained their royalty interest or conveyed their royalty interest and retained the land. *See Sheffield*, 124 Tex. at 308–09, 77 S.W.2d at 1029–30 (stating Texas courts have established the rule that rents or royalties payable under oil and gas mineral leases are severable and separable from ownership of surface estate and are property rights, and, given this rule, they are assignable by the owner). Similarly, they could have sold or assigned the possibility of reverter and retained the land, or they could have conveyed the land and retained the possibility of reverter. *See Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991); *York v. Kenilworth Oil Co.*, 614 S.W.2d 468, 471 (Tex.Civ.App.-Waco 1981, writ ref'd n.r.e.). It is undisputed in the present case that neither appellees nor their predecessors did so. Accordingly, their fractional interest in the royalty and the possibility of reverter were never severed from the surface estate. *Cf. Birdwell v. Am. Bonding Co.*, 337 S.W.2d 120, 131

(Tex.Civ.App.-Fort Worth 1960, writ ref'd n.r.e.) (stating, until any particular fractional or percentage interest of mineral estate has been initially vested (through grant or reservation) in one other than owner or owners of surface estate, said interest in mineral estate is not to be treated as having been "severed" from the surface estate, and thus, if grantor owns surface estate and fractional interest in mineral interest underlying same which has never been severed, as through grant or reservation, ownership is to an entire estate unsevered).

■ To say that appellees' royalty interest and possibility of reverter had not been severed from the surface estate in 1986 does not, however, answer the question of whether appellees' royalty interest and possibility of reverter were subject to foreclosure and thus covered by the Sheriff's Deed. The tax lien, authorized by Texas Constitution Article VIII, section 15 and the implementing statutes, extends only to the particular realty against which such taxes have been assessed. *See Richey v. Moor*, 112 Tex. 493, 497–98, 249 S.W. 172, 173–74 (1923). Thus, no parcel of real property may be held liable for any taxes except those assessed against that parcel. *State Mortgage Corp. v. Ludwig*, 35 S.W.2d 267, 268 (Tex.Civ.App.-San Antonio 1931), *rev'd·on other grounds*, 121 Tex. 268, 48 S.W.2d 950 (1932). Therefore, for appellees' mineral interests in the property to be taken in a tax foreclosure of the surface, those interests must have been taxed together with the surface and thus have been similarly delinquent and subject to the foreclosed tax lien. The taxing units admit, and the record shows, those

---

**10.** This statement is consistent with this court's analysis in *Sutton v. Green*, a divorce case in which the court rejected the husband's argument that "severance of some rights from the surface estate via an oil and gas lease necessarily severs the entire mineral estate." No. 14–01–01043–CV, 2002 WL 1489347, at *3 (Tex.App.-Houston [14th Dist.] July 11, 2002, no pet.) (not designated for publication).

circumstances were not present in relation to appellees' royalty interest in this case. Accordingly, to comport with Texas Constitution Article VIII, section 15, the 1986–87 judgment and order of sale necessarily had to except the royalty interest from foreclosure and sale. The royalty interest therefore was severed from the surface estate by virtue of the 1987 sale and did not pass to Pounds in the 1998 sale.

■ In contrast to the royalty interest, the possibility of reverter is a non-taxable interest. *Texas Turnpike Co. v. Dallas County*, 153 Tex. 474, 478, 271 S.W.2d 400, 402 (1954). As discussed above, the possibility of reverter in the mineral estate was never severed from the surface estate. Additionally, the legislature has specified that a tax lien has priority over the possibility of reverter. *See* Tex. Tax Code Ann. § 32.05(b)(3) (Vernon 2008).[11] Unlike the royalty interest in the present case, there are no circumstances, such as a separate and non-delinquent account, that present an impediment to foreclosure and sale of the possibility of reverter as an interest running with the surface estate. *But see Cypress–Fairbanks Indep. Sch. Dist. v. Loggins*, 115 S.W.3d 67, 72–73 (Tex.App.-San Antonio 2003, pet. denied) (holding (1) entity which owned possibility of reverter owned a nontaxable interest and could not be proper defendant to tax foreclosure sale and (2) purchaser of property of defaulting taxpayer would take title subject to inter-

est of entity owning possibility of reverter).[12]

■ For the preceding reasons, we conclude 1986 judgment of foreclosure and order of sale could not extend to appellees' royalty interest. Accordingly, the 1987 deed to the City of Alvin from the sheriff's sale conveyed an interest in the surface estate only. *See Alvin v. Zindle*, No. 14–06–01147–CV, 2007 WL 3071999, at *2 (Tex.App.-Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.) ("When the sheriff is ordered to sell certain property, the order gives him no authority to seize and sell any other property."). To the extent it purported to convey any other interest, it was void. *See id.* It therefore follows that the 1998 Deed Without Warranty from the City of Alvin to Pounds for the same property also granted and conveyed an interest in the surface estate only.[13] As explained above, however, the surface estate carried with it a possibility of reverter in the mineral estate.

## C. *Procedural Bars*

As part of her second issue, Pounds sets forth several procedural bars to appellees' asserting their right to the mineral estate and royalty interest. First, she argues appellees did not allege sufficient facts to warrant a bill of review. Next, she invokes Texas Tax Code sections 34.08, 34.05 and 33.54, which set forth conditions precedent to commencing a suit and limitations periods. *See* Tex. Tax Code Ann.

---

11. Although the legislature enacted this provision after the lien arose in the present case, the provision applies regardless of when the lien arose and applies to any cause of action pending on September 1, 2005 or brought after that date. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, §§ 12, 29(f), 30, 2005 Tex. Gen. Laws 3717, 3719, 3730–31.

12. *Loggins* was decided before the legislature amended Texas Tax Code section § 32.05(b)(3). *See supra* note 11.

13. Appellees contend that a deed without warranty is a quitclaim deed and then invoke rules applicable to quitclaim deeds. A deed without warranty, however, is different from a quitclaim deed and offers the buyer slightly more protection. *See Understanding a Real Estate Transaction*, 67 TEX. BAR. J. 1017 (Dec. 2004).

§§ 33.54, 34.05(f), 34.08 (Vernon 2008) (regarding limitations on actions relating to property sold for taxes, limitations on action attacking validity of resale of property by taxing unit, and conditions necessary to commence a challenge to validity of a tax sale, respectively).

Among other responses, appellees argue the 1986 foreclosure and order of sale were void because Cunningham, the owner of the surface and mineral estates at that time, was not named as a party. Appellees then argue that, because the 1986 foreclosure and the 1987 sale were void, the taxing units had nothing to convey to Pounds in 1998.

*Bill of review.* Pounds contends appellees' "bill of review action is invalid because there was no allegation of fraud and because it was not filed within four years of the default judgment." At oral argument, however, appellees informed this court they were not raising the issues related to the bill of review and were not contesting the adjudication regarding the land.[14] Accordingly, Pounds's argument directed at appellees' petition for bill of review is moot.

■ *Failure to deposit funds into the registry.* Pounds next argues appellees did not have "standing" to challenge the 1987 tax sale and the 1998 resale to Pounds because appellees did not deposit into the registry of the court an amount equal to the delinquent taxes. In support, she cites Tax Code section 34.08(a), which provides:

A person may not commence an action that challenges the validity of a tax sale under this chapter unless the person:

(1) deposits into the registry of the court an amount equal to the amount of the delinquent taxes, penalties, and interest specified in the judgment of foreclosure obtained against the property plus all costs of the tax sale; or

(2) files an affidavit of inability to pay under Rule 145, Texas Rules of Civil Procedure.

Tex. Tax Code Ann. § 34.08(a) (Vernon 2008).

Based on the clear language of the statute, there are two impediments to applying it to appellees' challenge to sale of their royalty interest in the present case. First, appellees did not commence the interpleader action that resulted invalidation of the tax sale of the royalty interest; SE-TEX did.[15] Second, the taxing units admit there were no delinquent taxes on the royalty; therefore appellees had no amount to deposit.

*Limitations periods.* Pounds also invokes the following limitations provisions

14. Appellees did not file a notice of appeal and therefore cannot seek greater relief than that afforded in the judgment. *See* Tex. R.App. P. 25.1(c) ("The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.").

15. In their original cross-claim against Brazoria County, appellees prayed that the court require the County to execute a new deed to Pounds "excepting the mineral royalties." In their original cross-claim against Pounds, which was part of the same document, appellees prayed for execution of "a correction Tax Deed Without Warranty that states 'surface and surface only.' " In their "First Amended Cross–Claim and Original Petition for Bill of Review," appellees included a single prayer for relief requesting (1) vacation of the 1986 judgment, (2) a take nothing judgment against "Cross–Defendants," (3) costs against "Cross–Defendants," (4) setting aside the sale to Pounds, and (5) all other relief in law and equity to which they were entitled. Appellees subsequently filed an "Amended Petition for Bill of Review," in which they requested the identical relief they had requested in their "First Amended Cross–Claim and Original Petition for Bill of Review."

of the Tax Code: section 33.54(a), previously setting a three-year limitation period on actions against a purchaser of property at a tax sale; 34.08(b), referring to the limitation periods in section 33.54(a); and section 34.05(f), setting a one year limitation period on an action attacking the validity of a resale of property by taxing unit which is party to judgment of foreclosure.

In 1987, the predecessor to section 33.54(a) provided for a three-year limitations period and subsection (b) provided:

> If a person other than the purchaser at the tax sale or his successor in interest pays taxes on the property during the three years following the date the deed is filed and that person was not served citation in the suit to foreclose the tax lien, the three year limitations period does not apply to that person.

Act of May 26, 1979, 66th Leg. R.S., ch. 841, § 1, sec. 33.54(b), 1979 Tex. Gen. Laws 2217, 2296 (amended 1997, current version at Tex. Tax Code § 33.54(b)).

■ The deed from the sheriff's sale resulting from the 1986 judgment of foreclosure was filed June 8, 1987. The record contains receipts showing Cunningham paid the 1987, 1988, and 1989 taxes on the royalty interest. Cunningham died in 1990. The record contains her 1990 tax statement with a handwritten notation "pd/ 1/29/91." It further appears Cunningham's estate and heirs continued to pay the taxes on the royalty interest through the time appellees (Cunningham's heirs) cross-claimed in the present suit. *See Pickens Joint Venture v. DOH Oil Co.*, 281 S.W.3d 116, 120–21 (Tex.App.-El Paso 2008, pet. denied) (stating, under current statute, limitations could have been tolled to extent entity proved it paid taxes on property during limitations period and until date it filed action challenging the sale). The taxing units admit no taxes are due on the royalty interest. Appellants do not contend Cunningham was named or served in the foreclosure suit. The section 33.54(b) limitations period does not preclude appellees' challenge to foreclosure of the royalty interest.

■ Pounds also relies on Texas Tax Code section 34.05(f), which provides: "An action attacking the validity of a resale of property pursuant to this section may not be instituted after the expiration of one year after the date of the resale." Tex. Tax Code Ann. § 34.05(f) (Vernon 2008). As discussed above, appellees were not precluded from challenging the 1986–1987 foreclosure and sale and, in our opinion and that of the trial court, have successfully done so in relation to the royalty interest. Thus, in 1987, the City of Alvin and the other taxing units, acquired only the surface estate. The 1998 deed to Pounds conveyed the "property ... acquired by [the 1987] tax foreclosure sale." That property, as discussed above, did not include appellees' royalty interest.

■ The limitations provisions in sections 34.08(a) & (b) and 34.05(f) do, however, preclude appellees' challenge to the sale of the surface estate along with the possibility of reverter. Appellees' attempt to circumvent these provisions by pointing to alleged defects of parties and in service is without merit. *See Pickens*, 281 S.W.3d at 120, 122–23 (holding that, under Texas Tax Code section 34.08, regardless of who was named and served with citation in original foreclosure suit, party challenging the resultant tax sale and deed must comply with the statute of limitations).

## IV. CONCLUSION

For the foregoing reasons, we overrule Pounds's first and second issues to the extent Pounds challenges the portions of the judgment declaring the 1986 judgment of foreclosure and order of sale, the 1987

tax sale, and the 1998 sale to Pounds void in relation to the royalty interest. Because no event resulted in severance of appellees' possibility of reverter from the surface estate, the foreclosure and sales of the surface estate carried with them appellees' possibility of reverter. We therefore modify the trial court's judgment to delete those portions declaring the 1986 judgment of foreclosure and order of sale, the 1987 tax sale, and the 1998 sale to Pounds void in relation to appellees' "mineral interest" (here, the possibility of reverter). We affirm the judgment as modified.