

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00085-CV
_____


MPH PRODUCTION COMPANY, INC., Appellant

V.

DENNIS D. SMITH AND WIFE, KATHLEEN REGINA SMITH, AND
JAMES L. HORAN AND WIFE, DORINE ANN HORAN, Appellees

---

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 08-1027

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

This dispute is about a right of first refusal in the oil, gas, and other minerals in 18.620 acres in Harrison County. In 1981, just before Jack F. Horan and Beverly Horan (the Horans) executed warranty deeds to Dennis D. Smith, Kathleen Regina Smith, James L. Horan, and Dorine Ann Horan (the Smith Purchasers) describing the land, the Horans indisputably owned the surface estate in the land and the right of first refusal as to the minerals. Also indisputably, the minerals had been retained in a 1979 deed[1] to the Horans from Johnnie Mae Taylor Simmons and Joyce Marie Taylor. Simmons and Taylor later transferred their retained minerals to MBC Resources, L.L.C. (MBC), which ultimately transferred them to MPH Production Company, Inc. (MPH), both of which transfers were accomplished without giving the Smith Purchasers the chance to buy those minerals pursuant to the right of first refusal. This dispute then arose.[2]

The Smith Purchasers sued MPH for breach of contract,[3] seeking damages and specific performance of the right of first refusal. After a bench trial, the trial court held that the right of

---

[1]The deed from Simmons and Taylor granted to the Horans the surface estate in the land and the right of first refusal to buy the minerals in the land.

[2]After being informed of the mineral conveyance to MPH, the Smith Purchasers sought to exercise their purported right of first refusal by tendering the sum of $5,586.00 to MPH, which is the amount MPH paid MBC for the property's mineral interests. MPH refused.

[3]No complaint is made that suit was improperly couched as a contract action, that there is no privity of contract between the Smith Purchasers and MPH, or that the remedy sought here is improper. There is also no claim that the ownership of the mineral estate is not subject to a right of first refusal. The crux of the claim is simply that the right is not enforceable by the Smith Purchasers.

first refusal was a covenant that "runs with the land" and awarded the Smith Purchasers specific performance and attorney's fees. MPH appeals.

On appeal, MPH contends that the right of first refusal does not "run with the land" in favor of the Smith Purchasers because there is no privity of estate and because the parties did not intend the right to run with the land in favor of subsequent owners of the surface estate. MPH also contends that attorneys' fees are not recoverable in this suit, which MPH characterizes as one to quiet title, because MPH owed no obligation to the Smith Purchasers and because the Smith Purchasers were not awarded damages. We affirm the trial court's judgment, because (1) the Smith Purchasers are owners of the right of first refusal, and (2) MPH did not preserve a sufficient objection to the award of attorneys' fees.

*(1)    The Smith Purchasers Are Owners of the Right of First Refusal*

Generally, a preferential right to purchase—a "right of first refusal"—requires the owner of the burdened real property interest to offer the interest first to the holder of the right on the same terms and conditions offered by a third-party prospective purchaser. *City of Brownsville v. Golden Spread Elec. Coop.*, 192 S.W.3d 876, 880 (Tex. App.—Dallas 2006, pet. denied); *McMillan v. Dooley*, 144 S.W.3d 159, 171 (Tex. App.—Eastland 2004, pet. denied).

The central question presented in this appeal is whether the Smith Purchasers received the

right of first refusal by virtue of the chain of title flowing to them from the Horans.[4]   We hold that the Smith Purchasers own the right of first refusal.   That is true regardless of whether they became owners of that right because the right of first refusal was a right that "ran with the land" in their favor or simply because it was part of the bundle of rights that was transferred by the deeds from the Horans.   The latter conclusion, in our opinion, better fits the law.

MPH argues that the right of first refusal is a personal covenant that does not run with the land because (a) there was no privity of estate between the parties in the 1979 deed, and (b) the parties to the 1979 deed did not intend the right to run with the land.

In Texas, a real property covenant runs with the land when it touches and concerns the land, it relates to a thing in existence or specifically binds the parties and their assigns, it is intended by the parties to run with the land, and the successor to the burden has notice.   *Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987); *Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.*, 111 S.W.3d 187 (Tex. App.—Texarkana 2003, pet. denied).   There must also be privity of estate between the parties when the covenant was established.[5]   *Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. App.—San Antonio 1997, writ denied).

---

[4]MPH does not argue that the right of first refusal is not enforceable because of the fact that it is the second transferee of the minerals.   There is also no contention that the right of first refusal does not burden the mineral interest in the hands of MPH.

[5]In this case, only privity of estate and the intent of the parties are in dispute.

Privity of estate exists when there is a mutual or successive relationship to the same rights of property. *Id.* (citing *Panhandle & S.F. R. v. Wiggins*, 161 S.W.2d 501, 504–05 (Tex. Civ. App.—Amarillo 1942, writ ref'd w.o.m.). Texas courts have held this requirement is satisfied by either simultaneous or successive interests in the same land. *Id.*

In *Wayne Harwell Properties*, the court held that an interest in the cash flow from a piece of land failed to satisfy the privity requirement because it was not "so closely linked to the land itself that it constitute[d] an interest in the land." *Id.* *But see Madera Prod. Co. v. Atl. Richfield Co.*, 170 S.W.3d 652, 659–60 (Tex. App.—Texarkana 2003, pet. denied in part & dism'd in part); *T–Vestco Litt–Vada v. Lu–Cal One Oil Co.*, 651 S.W.2d 284, 292 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (suit seeking net profits interest based on ownership of land is an interest in land for purposes of determining type of suit/venue).

At least one case has held that the interest transferred must convey the land involved, or an easement in the land, in order to meet the privity of estate requirement. *Clear Lake Apartments v. Clear Lake Utils. Co.*, 537 S.W.2d 48, 51 (Tex. Civ. App.—Houston [14th Dist.] 1976), *aff'd as mod. sub nom., Clear Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385 (Tex. 1977). This Court has held, however, that an option to purchase land creates an interest in land. *Madera Prod. Co.*, 107 S.W.3d at 660 (venue dispute) (citing *Hitchcock Props. v. Levering*, 776 S.W.2d

236, 238–39 (Tex. App.—Houston [1st Dist.] 1976, writ denied)).[6]

Because Simmons and Taylor reserved the mineral estate that is the subject of this controversy, conveying the surface only, separate and distinct estates were created: a surface estate and a mineral estate. *See Acker v. Guinn*, 464 S.W.2d 348, 352 (Tex. 1971); *Pounds v. Jurgens*, 296 S.W.3d 100 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). MPH argues that there is no privity of estate because the 1979 deed conveyed only the surface interest, and "therefore, there was no simultaneous or successive interest in the mineral estate between the Grantor and the Grantees pursuant to the 1979 Warranty Deed." We find there is successive ownership of the right of first refusal because, even though the 1979 deed created two separate estates, the ownership of the mineral estate owned by Simmons and Taylor became burdened with the obligation represented in the right of first refusal, a right which was passed to the Horans. Accordingly, there was privity of estate between the parties to the 1979 deed.

In order for a covenant to run with the land, the parties who created the covenant must intend for it to do so. *Rolling Lands Invs., L.C.*, 111 S.W.3d at 200. The parties dispute whether the 1979 deed expresses intent for the right to run with the land.

Grants are interpreted in favor of the grantee. *Humble Oil & Ref. v. Harrison*, 205 S.W.2d 355 (Tex. 1947). Courts generally interpret conveyances to offer the largest grant possible unless

[6]Although the court in *Hitchcock* discussed a real estate option within the context of the Real Estate Licensing Act, it also stated that "[g]iven the nature of an option's relation to and limitation over the land optioned, it is no less logically included in the definition of an 'interest' in land, than is, for example, an easement, or royalty interest, or a contingent future interest." *Hitchcock Props.*, 776 S.W.2d at 238.

6

there is specific, unambiguous reservation. *Russell v. City of Bryan*, 919 S.W.2d 698 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

When a deed is unambiguous, our primary duty in construing it is to ascertain the intent of the parties from the language in the deed. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The actual intent of the parties as expressed in the deed as a whole prevails over arbitrary rules. *Id*. at 462. We ascertain the parties' intentions as expressed in the document by considering the entire writing and attempting to harmonize and give effect to the whole document. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). We construe the document from a utilitarian standpoint, bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive. *Id*. at 312 (citing *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

We do not look for the subjective intent of the parties, which may be conflicting; instead, it is the objective intent, the intent expressed or apparent in the writing, that is sought. *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 493 (Tex. App.—Fort Worth 2008, pet. denied). Even if different parts of the deed appear contradictory or inconsistent, courts must strive to construe the instrument to give effect to all of its provisions. *Luckel*, 819 S.W.2d at 462. Each word and phrase should be given its plain, grammatical meaning unless doing so would clearly defeat the parties' intent. *Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex. App.—Eastland 2007, no pet.). The usual labels given the clauses, such as granting, warranty,

7

and habendum, are not controlling.   *Luckel*, 819 S.W.2d at 463.

The right of first refusal states:

And for the same consideration, we have granted, and do grant, to the Grantees the right, privilege and option of purchasing the oil, gas and other minerals, or any portion thereof, in and under the above described land, for such sum as we may be willing to accept upon our receipt of a bona fide offer from any third party (being any party other than one of the Grantors); and upon the receipt by either of the Grantors of an offer to purchase a Grantor's interest in oil, gas and other minerals, or any portion thereof, which said Grantor desires to accept, the Grantor receiving such offer shall notify the Grantees of such offer and the terms thereof, and such Grantor's willingness to accept such offer, and the Grantees shall have the right and privilege of purchasing the interest of said Grantor in the oil, gas and other minerals of the price and upon the terms and conditions therein stated, at any time within twenty days after the Grantees receive such notice from said Grantor.

Immediately after the right of first refusal, the 1979 deed specifies that:

The right, privilege and option herein granted shall be binding upon the Grantors, and their respective heirs and assigns.   No sale of an interest in oil, gas and other minerals may be made by a Grantor without complying with the provisions set out herein.

There is no corresponding paragraph stating that the right, privilege, and option is transferrable to the Grantees' heirs, assigns, or successors in interest.   There is likewise no statement that an heir, successor, or assign of the grantor is prohibited from selling the mineral estate without first complying with the provisions of the right of first refusal.

The next paragraph, the habendum clause, contains the general warranty language on which the Smith Purchasers rely for their argument that the parties intended the right of first refusal to pass to the Horans' successors in title.   The paragraph reads:

8

To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee and the Grantee's heirs, successors and assigns forever, and the Grantor binds the Grantor and the Grantor's heirs, executors, administrators, successors and assigns, to warrant and forever defend, all and singular, the said premises unto the said Grantee, and the Grantee's heirs, successors and assigns, against every person whomsoever claiming, or to claim the same, or any part thereof.

In *Stone v. Tigner*, the property owner, Thier, leased the property to Tigner and gave him a right of first refusal that, during the term of this lease, the Lessors give and grant to the Lessee the first right and option to purchase any or all of the lands and premises so contemplated to be sold by Lessors at the best bona fide price which the Lessors may be offered for the same . . . . 165 S.W.2d 124, 127 (Tex. Civ. App.—Galveston 1942, writ ref'd). On appeal, the court held that the right of first refusal involved the land and its use and occupation, that the option runs with the land itself, and thus, that it was not a collateral or personal contract between the parties. *Id.*

In *Harris*, a homeowners' association filed a Declaration of Covenants governing and restricting the use of the members' property. The declaration provided that all the lots within the subdivision were impressed with certain covenants and restrictions and that such would run with the land and be binding on all parties acquiring rights to any of the property therein. The Supreme Court of Texas held that the "Declaration of Covenants evidences the intent of the original parties that the covenant run with the land, and the covenant specifically binds the parties, their successors and assigns." 736 S.W.2d at 635.

In *McMillan*, a dispute arose over the enforcement of a preferential purchase right in a

9

package conveyance of oil and gas leases. 144 S.W.3d 159. The right's relevant language provided:

> It is further understood and agreed that we, for ourselves, *our successors and assigns*, reserve a preferential right to purchase the lease to be assigned herein, including any personal property which may be situated thereon. Before *you*, *or your heirs*, *successors or assigns*, shall (1) sell all or any portion of the lease to be assigned herein, (2) plug and abandon any wells on said lease, or (3) finally plug and abandon said lease, you shall first notify *us*, *or our successors or assigns*, in writing by registered mail. Such notification shall include the highest bona fide price offered, and *we*, *or our successors or assigns*, shall have ten (10) days after receipt of such written notification to purchase for the price offered and receive an assignment, or to reject such offer and allow same to be sold and/or abandoned. If *we*, *or our successors or assigns*, fail to act within ten (10) days after receipt of such written notice, then *you*, *your heirs*, *successors or assigns*, shall be free to sell and/or abandon. The above and foregoing preferential option to purchase shall not apply to hypothecation or mortgage of your assets.

*Id.* at 164 (emphasis added). In deciding one of the issues, the court of appeals held that the preferential purchase right was a covenant running with the land. *Id.* at 185.

While the use of terminology such as "successors and assigns" is helpful in determining intent, the use of such terminology is not dispositive of the issue, and an obligation intended to run with the land can be created without such language. *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 395 (Tex. App.—Texarkana 1999, pet. denied). In *Musgrave*, a property owners' association filed suit to enforce restrictive covenants governing the subdivision. *Id.* at 390. Despite the lack of a writing indicating that the rights and obligations passed to the parties' successors and heirs, this Court found sufficient evidence of intent from subsequently executed indemnity agreements, the original plats of the subdivision, and language contained in later

10

conveyances. *Id.* at 395–96.

In the case of *Montfort v. Trek Resources*, the court held that a covenant to provide water ran with the land despite the lack of "successors and assigns" language with respect to the grantee.[7] 198 S.W.3d 344, 355–56 (Tex. App.—Eastland 2006, no pet.). The court found that the language in the special warranty deed demonstrated the intent that the obligation to furnish water would run with the land because the language did not limit the obligation to furnish water to the grantee only. *Id.*

Here, it is not claimed that the obligation to honor the right of first refusal does not burden the mineral estate in the hands of successive owners. The deed is silent regarding whether the right was meant to pass to the Horans' successors in interest. There is also no language limiting the right of first refusal to only the Horans. The Smith Purchasers argue that the general warranty language in the habendum clause "clearly expresses that the right of first refusal inures to the benefit of the [Horans'] successors . . .," and that the habendum clause clarifies the language of the granting clause.[8] MPH contends that the habendum clause is inapplicable to the right because the right of first refusal is consistently referred to in the 1979 deed as "the right, privilege and option"

---

[7]It is notable that the Eastland court found that, "[a]lthough no Texas case has stated a general rule with respect to covenants to supply or furnish water, case law from other jurisdictions establishes that covenants to supply or furnish water generally run with the land." *Montfort*, 198 S.W.3d at 355 (citing *Camenisch v. City of Stanford*, 140 S.W.3d 1, 5 (Ky. Ct. App. 2003)).

[8]In the alternative, the Smith Purchasers argue that the 1979 deed is ambiguous and that, at trial, ambiguity was tried by consent as evidenced by Finding of Fact number 16, where the court found that the parties to the 1979 deed intended the right to run with the land. We find that the issue of ambiguity was not tried by consent. The trial court made no finding of ambiguity, and neither party introduced parol evidence regarding the intent of the original Grantors or Grantees.

11

and there is no such reference in the clause. MPH also argues that the "rights and appurtenances" language in the habendum clause refers to the actual premises conveyed, the surface property, and since the Horans did not receive the mineral interest, they had no "appurtenant" rights to the minerals.

We conclude that it is a stretch to read into the subtleties of the deed's text an intent to make the right of first refusal a personal right only. From the language of the deed and the nature of the right conveyed, we conclude that the right was intended to accompany the surface ownership, or at least that the right was transferrable by the owner of the surface estate.

We hold that the Smith Purchasers own the right of first refusal for another reason: the deeds from the Horans transferred that right to the Smith Purchasers.

Any doubt in construing a deed should be resolved against the "grantors, whose language it is, and be held to convey the greatest estate permissible under its language." *Garrett v. Dils Co.*, 299 S.W.2d 904, 906 (Tex. 1957). A deed, capable of two readings, should be read to favor the grantee and convey the largest interest the grantor could convey. *Ladd v. Du Bose*, 344 S.W.2d 476 (Tex. Civ. App.—Amarillo 1961, no writ); *Chestnut v. Casner*, 42 S.W.2d 175 (Tex. App.—Austin 1931, writ ref'd). When determining the interest conveyed by a deed, we harmonize the text of the conveyance and allow the largest conveyance allowed by the deed's language. *Tex. Pac. Coal & Oil Co. v. Masterson*, 334 S.W.2d 436, 439 (Tex. 1960).

The 1981 deeds from the Horans to the Smith Purchasers described the full, fee ownership

12

of the 18.620 acres, but included the following provision:

> This conveyance is made and accepted subject to any valid mineral reservation, conveyance, oil, gas and mineral lease, or easement presently of record in the Office of the County Clerk of Harrison County, Texas.

Note that the deeds do not purport to convey just the surface estate; they purport to convey the fee, subject to any valid reservations of minerals. This language subsumes all rights not excluded, including the right to purchase the minerals—this right being connected to the ownership of the surface estate—should the owner of the minerals wish to sell them.

> The Smith Purchasers own the right of first refusal.

*(2)     MPH Did Not Preserve a Sufficient Objection to the Award of Attorneys' Fees*

The trial court awarded attorney's fees to the Smith Purchasers on the basis of both a breach of contract and a declaratory judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.009[9] (declaratory judgment), 38.001 (breach of contract) (West 2008).[10]  MPH contends that the trial court erred in awarding attorney's fees because:  (a) despite the form of the pleadings, this was a trespass-to-try-title action, that is, a dispute over title to real property; and (b) MPH owed no contractual duties or obligations to the Smith Purchasers and no money damages were awarded.

We review de novo the trial court's decision to award attorneys' fees.  *Berg v. Wilson*, 353 S.W.3d 166, 182 (Tex. App.—Texarkana 2011, pet. denied); *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537 (Tex. App.—Dallas 2005, no pet.).

---

[9]The award of attorney's fees based on a declaratory judgment is curious because this case was pled and tried as an action for breach of contract.   Neither party pled or raised the issue of declaratory judgment.   The first time that basis appears in the record is in the one-sentence finding concerning attorney's fees appearing on the last page of the trial court's findings of fact and conclusions of law.   That referred to just Section 37.009 of the Texas Civil Practice and Remedies Code, dealing with declaratory judgment.   Thereafter, neither in the trial court, nor in this Court, no complaint or objection has been raised concerning this late addition of declaratory judgment as a basis for awarding attorneys' fees in this action.

[10]The trial court awarded $15,000.00 in attorney's fees for trial, $2,000.00 if MPH files a motion for new trial that is not granted, a contingent fee of $5,000.00 if MPH files a notice of appeal and the trial court's judgment is affirmed, a contingent fee of $1,000.00 if MPH files a petition for discretionary review and the motion is denied, and a contingent fee of $5,000.00 if MPH files a petition for discretionary review and the motion is refused or granted and the trial court's judgment is affirmed.

*(a)    No Trespass-to-Try-Title Issue Was Preserved*

MPH first argues that this suit is "in effect, a trespass to try title action" and therefore, the Smith Purchasers are not entitled to attorney's fees on either basis used by the trial court.   At trial, MPH's objection to the award of attorney's fees stated, in relevant part:

> I don't understand the theory of recovery that he's alleged that entitles him to attorney's fees.   There's no contract between my client and any of those Plaintiffs . . . Unless they can come up with something else, I really don't see where they have established that under the Texas Civil Practice and Remedies Code, Chapter 38.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling.   *See* TEX. R. APP. P. 33.1(a); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992).   If a party fails to do this, error is not preserved, and the complaint is waived.   *See Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991).

Here, MPH failed to object or otherwise raise the issue of trespass to try title with the trial court.   Accordingly, MPH failed to preserve this error for our review.

*(b)    Standing Alone, a Breach of Contract Issue Is Insufficient*

MPH also contends that the trial court erred in awarding attorney's fees for breach of contract because they had no duties or obligations to the Smith Purchasers and because no money damages were awarded.

Here, the trial court awarded attorney's fees for both breach of contract and declaratory judgment.   But, as stated above, MPH failed to preserve an objection to the award of attorneys'

15

fees for declaratory judgment. Even if we were to sustain MPH's objection to the award of attorney's fees for breach of contract, we would have no choice but to uphold the award of attorney's fees for declaratory judgment, because that basis is unchallenged on appeal. Therefore, we need not address whether fees were properly awarded.

For the foregoing reasons, we affirm the trial court's judgment.


                                        Josh R. Morriss, III
                                        Chief Justice


Date Submitted:      February 15, 2012
Date Decided:        May 18, 2012


16